IN THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA

IOWA LIBERTARIAN PARTY and
JAKE PORTER,

        Plaintiffs,

VS.

        Civil Action No.  4:19-cv-00241-SMR-HCA

PAUL D. PATE, Secretary of State
and State Commissioner of Elections,

        Defendant.

## BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs by counsel submit the following brief in support of their motion for summary judgment.

### SUBJECT MATTER TABLE OF CONTENTS

THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IOWA ELECTION LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

BECAUSE OF THE IMPACT OF A BALLOT RESTRICTION ON THE FUNDAMENTAL RIGHTS OF VOTERS, PARTIES, AND CANDIDATES, THE VALIDITY OF IOWA'S FILING DEADLINE MUST BE DETERMINED BY AN INQUIRY THAT ANALYZES AND ASSESSES THE CHARACTER AND MAGNITUDE OF THE BURDENS IT CREATES, THE STATE'S INTERESTS THE PROVISION PURPORTEDLY PROMOTES, AND THE EXTENT TO WHICH THE EARLY DEADLINE IS NECESSARY TO ACHIEVE THOSE INTERESTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A.   Iowa Code §§ 44.4 & 45.4 Impose a Heavy Burden on a Minor Party's Ability to Recruit and Place Candidates on the General Election Ballot. . . 5

B.   Iowa Lacks Any Reasonable Basis for Requiring a Mid-March Filing Deadline for Minor Party Candidates, Let Alone a Compelling State Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

C.   Whatever the State's Reason for the Mid-March Filing Deadline, Burdening the Plaintiffs' Rights Is Not Necessary to Its Accomplishment. . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

APPENDIX A – Select Provisions of the Iowa Election Code

APPENDIX B – Chart of Decision Invalidating Early Filing Deadlines

## THE PARTIES

Plaintiffs are the Iowa Libertarian Party and Jake Porter. The Party is a political organization that has fielded, or attempted to field, candidates for various government offices in the State of Iowa, as well as nationally. Mr. Porter is a resident of Council Bluffs, Iowa, who is a member and supporter of the Libertarian Party and has previously run as a Libertarian candidate for Secretary of State and Governor. He intends to continue to promote the Libertarian Party and its candidates and to be a candidate again. Defendant Paul D. Pate is the Iowa Secretary of State. As such, he is charged by Iowa Code § 47.1 to serve as the State Commissioner of Elections and thus to oversee the implementation and enforcement of the State's election laws.

## IOWA ELECTION LAW

Every two years, Iowa alternately votes on candidates for Governor of the State and for President of the United States. If an association's candidate for one of those offices garners at least two percent of the total vote, then Iowa designates it as a "political party" for the next election cycle.

Iowa Code § 43.2.1.b.[1]  If qualified as such, a party may nominate its candidates during the next cycle through the State's primary election, which is held between June 2 and June 8 of an election year.  Iowa Code § 43.7.  An association formed to promote a particular ideology and to field candidates for public office that has not qualified as a political party is classified as a "nonparty political organization" ("NPO").  Iowa Code § 44.1, *et seq*.  The Code affords such an organization alternative methods for placing candidates on the general election ballot.  Section 44.1 allows an NPO to nominate candidates by a convention or caucus that has the participation of at least 250 eligible voters including at least one from at least twenty-five counties.  Chapter 45 of the Code provides for the nomination of candidates by a petition endorsed by a minimum number of voters depending upon the office, ranging from fifty valid signatures for state representatives to 1,500 for offices voted on statewide.  Iowa Code § 45.1.

Prior to July 1, 2019, nominations made by either a nominating convention or petition had to be filed with the Commissioner of Elections no later than the seventy-third day before the general election, which ranged between August 20 and 26.  Iowa Code §§ 44.4 & 45.4.  The 2019 Iowa Legislature, however, reset the filing date for nonpresidential minor party and independent candidates to the eighty-first day before the primary election, or between March 14 and 20, more than five months earlier than the prior deadline and about seven and a half months before the general election.  *Id*. (2019).

---

[1]The provisions of the Iowa Election Code cited in this section are collected in Appendix A to this Brief.

ARGUMENT

BECAUSE OF THE IMPACT OF A BALLOT RESTRICTION ON THE FUNDAMENTAL RIGHTS OF VOTERS, PARTIES, AND CANDIDATES, THE VALIDITY OF IOWA'S FILING DEADLINE MUST BE DETERMINED BY AN INQUIRY THAT ANALYZES AND ASSESSES THE CHARACTER AND MAGNITUDE OF THE BURDENS IT CREATES, THE STATE'S INTERESTS THE PROVISION PURPORTEDLY PROMOTES, AND THE EXTENT TO WHICH THE EARLY DEADLINE IS NECESSARY TO ACHIEVE THOSE INTERESTS.

Since *Williams v. Rhodes*, 393 U.S. 23 (1968), the United States Supreme Court has repeatedly held that electoral restrictions imposed on political candidates implicate fundamental constitutional rights of the candidates, their supporters, their parties, party members, and voters. These rights are grounded in the First Amendment's freedoms of speech and association and the First and Fourteenth Amendment's guarantee of equal participation in the political process. *E.g., Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Illinois Elections Board v. Socialists Workers Party*, 440 U.S. 173 (1979). To protect the assorted rights, the Supreme Court has used the analysis first set forth in *Anderson*. In assessing the legitimacy of a ballot regulation, a court

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

460 U.S. at 789. Later cases have made clear that the analysis adjusts according to the degree of interference with the individual rights – the greater the imposition on candidates' and voters' interests, the weightier must be the state's justification – with due consideration given to less burdensome alternatives. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992), *quoting Norman v. Reed*, 502 U.S. 279, 289 (1992). Thus, when the First and Fourteenth Amendment rights are subjected to substantial restrictions, the responsible "regulation must be 'narrowly drawn to advance a state

4

interest of compelling importance.'" *Burdick*, 504 U.S. at 434 (quoting *Norman*, 502 U.S. at 289);[2]

*accord, e.g., MacBride v. Exon*, 558 F.2d 443 (8th Cir. 1977) (February deadline was invalid).

A.   Iowa Code §§ 44.4 & 45.4 Impose a Heavy Burden on a
Minor Party's Ability to Recruit and Place Candidates on the General Election Ballot.

Application of the foregoing analysis to the filing deadline in §§ 44.4 and 45.4 will lead to

its invalidation. As described below, the sections' early deadline weighs on valuable rights of

political participation protected by the First and Fourteenth Amendments. And the magnitude of the

burden that the sections place on those rights is extreme. Numerous courts, in addition to *Anderson*

itself, have now invalidated early filing deadlines for third parties and independent candidates as

creating severe burdens on their political rights without sufficient state justifications. *E.g., Nader*

*v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (invalidated June deadline for independent candidates);

*Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006) (struck down Ohio's deadline

for minor parties of a year before the election); *Council of Alternative Political Parties v. Hooks*, 121

F.3d 876 (3rd Cir. 1997) (enjoined April petition deadline for minor parties as burdensome and

invasive of First Amendment rights); *New Alliance Party of Alabama v. Hand*, 933 F.2d 1568 (11th

Cir. 1991) (enjoined April deadline for parties as too early); *MacBride v. Exon*, 558 F.2d 443 (8th

Cir. 1977) (February deadline was invalid); *see* Appendix B to this Brief (collecting the cases).

Plaintiffs' witnesses have identified the serious problems that the March deadline creates for

minor parties. Richard Winger, a long-time expert on minor political parties, independent

---

[2]*See also, e.g., Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214
(1989); *Illinois Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 186 (1979).

candidates, and the electoral process[3] noted that such an early deadline gives the minor parties a lot

less time to recruit candidates. Winger Deposition at 11; Joint Appendix ("JA") at 21. To illustrate,

he observed that in Iowa this year, only one minor party or independent candidate ran for the United

States House of Representatives compared to nine in 2018 and three in 2016. One would have to

go back to 1990 to find only a single nonmajor party U.S. House candidate. *Id.* at 11-12; JA at 21.

Mr. Winger also testified that minor parties have a more difficult time recruiting volunteers that early

in an election year compared to late in the year. *Id.* at 13; JA at 21. That occurred in Iowa in 2020.

Affidavit of Jake Porter. JA at 46 & 49.[4] Voter interest increases and issues can change greatly after

mid-March as the election year progresses. *E.g.*, 1968 (Lyndon Johnson opted not to run on March

31 and Martin Luther King and Robert Kennedy were assassinated on April 4th and June 6th,

respectively); 2020 (COVID-19 created a pandemic forcing major changes in and after mid-March).

Similarly, William Redpath, who has served on the National Committee of the Libertarian

Party in 1989-93 and 2003-20 and has "for the past thirty years . . . headed up the National Ballot

Access numbers of the Libertarian National Committee," Redpath Deposition at 5-6; JA at 39,

testified that with a mid-March deadline, the Party "cannot spend as much time recruiting candidates.

---

[3]Mr. Winger has worked on minor party ballot access issues since the sixties and since
1985 has published Ballot Access News, which tracks statutory and judicial developments across
the country as they relate to minor political parties and independent candidates as well as to the
major parties. Winger Deposition at 4; JA at19. He has qualified as an expert on such matters in
fourteen different cases. *Id.* at 7; JA at 20; Winger Dep. Ex. 1; JA at 31-37. Plaintiffs listed him
as an expert witness in this case, and his deposition was conducted, by agreement, "as if he were
an expert." Winger Dep. at 8; JA at 20. All or almost of his deposition testimony, however, was
factual.

[4]There are two copies of the Affidavit of Jake Porter in the Joint Appendix. The first one,
JA at 46-48 is an unsigned copy that plaintiff's counsel mistakenly filed on PACER on February
27, 2021 and then served on the defendant. The second one, JA at 49-50, is signed and
notarized. The signed copy is blurred in spots, so the unsigned version may be easier to read.

. . . [W]e would have to start earlier to recruit candidates and cut things off earlier." *Id.* at 8; JA at 39. In addition, with such a deadline, candidates would "have to petition during winter months or before. And that would be very difficult. It's difficult to petition outside during the winter, and it's . . . difficult, more difficult to get people to stop to sign a petition than it is in the spring or the summer." *Id.* at 9; JA at 40. During winter fewer people are out and about and, if they are out, are less willing to stop. "[W]hen it's cold outside, . . . it's no fun to be out there, and I can see a lot fewer people would be willing to do [petitioning], and definitely a lot fewer people are willing to stop and sign." *Id.* at 9-10; JA at 40. It follows that it would also be much more difficult to engage people in the political discussion that is often needed to educate voters about a minor party's platform and to convince them why they should sign a petition. In addition, "cutting things off early also means that . . . people cannot react to the developments in the political landscape during the year, or candidates who win primaries from other parties . . ., people might feel stimulated to step up and run for office, but with a March deadline they would be foreclosed from doing that" in response to the major party primary results. *Id.* at 9; JA at 40. And, of course, petitioners do not ordinarily have access to private malls – where winter shoppers go. "[I]t's very rare to be able to petition on private property." *Id.* at 10; JA at 40.

In this case, the mid-March deadline in 2020 fell more than five months before the final gavel came down at the second major party convention that nominated its presidential candidates and about seven and a half months prior to the general election. The above-cited cases have identified various adverse consequences that such early filing deadlines impose on candidates running outside the major parties. Courts have noted, for example, that springtime filing requirements create serious obstacles for the nonmajor parties and candidates to build coalitions to counter the major party

candidates, who might not be providing what groups of voters want and who frequently (as in Iowa)

will not even be identified until well after nominating petitions must be submitted. *Anderson*, 460

U.S. at 791-92; *Council of Alternative Political Parties*, 121 F.3d at 880. As the Supreme Court

explained in *Anderson*,

> An early filing deadline may have a substantial impact on independent-minded voters. In election campaigns, particularly those which are national in scope, the candidates and the issues simply do not remain static over time. Various candidates rise and fall in popularity; domestic and international developments bring new issues to center stage and may affect voters' assessments of national problems. Such developments will certainly affect the strategies of candidates who have already entered the race; they may also create opportunities for new candidacies. Yet Ohio's filing deadline prevents persons who wish to be independent candidates from entering the significant political arena established in the State by a Presidential election campaign-and creating new political coalitions of Ohio voters-at any time after mid-to-late March. At this point developments in campaigns for the major-party nominations have only begun, and the major parties will not adopt their nominees and platforms for another five months. Candidates and supporters within the major parties thus have the political advantage of continued flexibility; for independents, the inflexibility imposed by the March filing deadline is a correlative disadvantage because of the competitive nature of the electoral process. . . .

> Since the principal policies of the major parties change to some extent from year to year, and since the identity of the likely major party nominees may not be known until shortly before the election, this disaffected 'group' will rarely if ever be a cohesive or identifiable group until a few months before the election. Indeed, several important third-party candidacies in American history were launched after the two major parties staked out their positions and selected their nominees at national conventions during the summer.

460 U.S. at 790-92; *accord, Green Party of Tennessee*, 2012 U.S. Dist. Lexis at \*135-37; *Nader*

*2000 Primary Committee, Inc. v Hazeltine*, 110 F. Supp. 2d at 1207-08.

The Eighth Circuit has been in full agreement with the *Anderson* Court about the burdens

imposed by early filing deadlines for minor party and independent candidates. *McLain v. Meier*, 637

F.2d 1159 (8th Cir. 1980), struck down a North Dakota statute requiring "new party" candidates to

file their petitions by June 1 of the election year, more than ninety days before the primary and more

than one hundred fifty days before the general election.   After reviewing the relative burdens imposed by petition percentage requirements, the Court noted that "the time at which nominating petitions are filed can have an equal if not greater impact on the viability of third party candidacy." *Id.* at 1164.   The North Dakota deadline was "particularly troublesome:"

> [M]ost voters in fact look to third party alternatives only when they have become dissatisfied with the platforms and candidates put forward by the established political parties. . . . Accordingly, it is important that voters be permitted to express their support for independent and new party candidates during the time of the major parties' campaigning and for some time after the selection of candidates by party primary."

*Id.*; *accord MacBride v. Exon*, 558 F.2d 443, 448-49 (8th Cir. 1977) (Nebraska statute that required new parties to file their petitions ninety days before the state's primary and nine months before the general election imposed an "arbitrary restriction" on the process); *see also McLain v. Meier*, 851 F.2d 1045 (8th Cir. 1988) (amended N.D. act that cut the number of required signatures by more than half and moved the filing deadline to fifty-five days before the primary was reasonable).

The conclusion to be derived from the cumulation of the evidence on the impact of an unduly early deadline and the judgment of the above authorities[5] is that Iowa's mid-March filing deadline for the Libertarian Party's candidates imposes a significant burden upon them and can be upheld only upon a showing that the deadline is necessary to sustain a compelling state interest. *E.g., Burdick, supra*; *Norman, supra*; *McLain* I, *supra*; *MacBride*, supra.

B.   Iowa Lacks Any Reasonable Basis for Requiring a Mid-March Filing Deadline for Minor Party Candidates, Let Alone a Compelling State Interest.

Iowa's justification for the deadline in §§ 44.4 and 45.4 is, frankly, "not much."   Molly Widen, Legal Counsel to the Secretary of State and the person designated by the defendant to speak

---

[5]*See also* Appendix B to this Brief, which lists the cases striking down various early deadlines.

about the statute, testified that her "only understanding" of the reason for changing the deadline from August to March was "for uniformity" – to create the same filing deadline "[f]or the major political parties as well as the non-political party organizations." Widen Dep. at 12; JA at 12. When asked "what was the legislative perception that there was some value to achieving this uniformity," she replied, "I'm not – I'm not sure." *Id.* at 12-13; JA at 12-13. She then added that the March deadline "does allow us to do the whole entire filing period at once instead of having to do it twice," although she also conceded that the office would "still be processing the same number of candidate petitions." *Id.* at 14; JA at 13. She was not aware of any problems that were created by the August deadline. *Id.* at 12; JA at 12. *See Nader 2000 Primary Committee*, 110 F. Supp. 2d at 1204 (there was no evidence that South Dakota's August deadline had caused any problems in its 23 years; 33 states had filing deadlines for presidential candidates in August or later). Indeed, the Eleventh Circuit has concluded that "[n]o one can seriously contend that a deadline for filing for a minor party and its candidates seven months prior to the [general] election is required to advance legitimate state interests." *New Alliance Party of Alabama*, 933 F.2d at 1576. The Third Circuit has expressed a similar inability to identify *any* state interest that could support an April deadline for minor parties. *Council of Alternative Political Parties*, 121 F.3d at 881.

Iowa's rationale for the March deadline in this case has some deep flaws.

First, the desire for "uniformity" has little more than cosmetic effect and actually imposes a discriminatory burden on minor party candidates. After noting that the Ohio law struck down in *Anderson v. Celebrezze* "serve[d] the interest of treating all candidates alike," and created the same filing deadline for petitioner as it did for the major party candidates, that Court continued: "But both the burdens and the benefits of the respective requirements are materially different, and the

reasons for requiring early filing for a primary candidate are inapplicable to independent [and minor party] candidates in the general election." 460 U.S. at 800.  Here, as in *Anderson*, the differences between major party candidates and minor party candidates are obvious.  The need for a preprimary deadline with lead time to verify signatures for major party candidates is patent.  If a candidate wants to participate in the primary, he or she must file in advance of it and must establish his or her credentials.  But there is absolutely no reason why the State needs the petitions and filings of a minor party's candidates in March.  As the Eighth Circuit said in *MacBride*;

> The fact is there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. . . . Sometimes the grossest discrimination can lie in treating things that are different as though they were alike, a truism well illustrated in *Williams v. Rhodes, supra.*

558 F.2d at 449 (*quoting, with approval*, the district court's opinion); *accord, Anderson*, 460 U.S. at 802; *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

Second, Iowa, in fact, facially treats minor parties in a seriously discriminatory manner.  That is because Iowa law permits the major parties to fill in candidates for open slots on their ballot slates as late as the 73rd or the 69th day (depending on the office) before the general election.  Iowa Code § 43.78.2 & .3.  In 2020, those dates were August 20 and August 24.  The state provides no such leniency to minor parties.

Third, any interest in concentrating the filing season into one compact period, to perhaps increase efficiency, Widen Dep. at 14; JA 13, is rendered nugatory by the fact that in presidential years §§ 44.4.1 and 44.5 would actually make the verification process more burdensome for the Secretary's office.  That is because the filing deadline for presidential candidates is mid-August.  Widen Dep. at 17.  Thus, in those years, there would still be two petition-filing and verification

11

seasons and – unlike under the old August deadline – the office could not combine the verification process for minor party presidential candidates with the down ballot candidates.  In any event, whether minor party petitions are verified in March or in August, the amount of signature processing for the Secretary's office for the latter candidates will be the same, Widen Dep. at 14; JA 13, thus throwing into serious question whether the March deadline creates *any* efficiencies.

Finally, if there be any unarticulated advantage to finalizing minor party candidates in March of an election year, it would be countermanded by Iowa Code § 44.4.2.  When the 2019 Legislature changed the filing deadline in 2019, it left in place the deadlines for making objections to candidates' petitions of between 63 days 68 days "before the election" (depending on the office), or sometime in late August.  *Id.*  Thus, there would be no finality on minor parties' candidates until those later dates.  So, what's the point of a March filing deadline for nonparty political organizations?

As in *Anderson*, "[u]nder any realistic appraisal, the 'extent and nature' of the burdens [the State] has placed on the voters' freedom of choice and freedom of association . . . unquestionably outweigh" the State's interests.

C.    Whatever the State's Reason for the Mid-March Filing Deadline, Burdening the Plaintiffs' Rights Is Not Necessary to Its Accomplishment.

Although filing deadlines necessarily run on a continuum, and concluding that some point on that continuum a line is "necessary" is a somewhat arbitrary (though not necessarily capricious) determination, it is clear enough that a mid-March deadline for minor party candidate petitions falls on the unnecessary side of the line.  We know that because Iowa operated for years with a mid-August deadline that had not created any identifiable problems or difficulties.  Widen Dep. at 12; JA at 12.  Moreover, William Redpath, the thirty-year chair of the National Libertarian Party's Ballot

Access Committee, is "not aware of any states that have a filing deadline in March or before, other than Iowa." The defendant has not identified any unique circumstance in Iowa that would justify making her a complete outlier on this issue. Indeed, the Iowa winters that precede the mid-March deadline and blanket the current petitioning season would provide an exceptional reason for concluding such a deadline is not necessary and does not promote any legitimate state interest.

CONCLUSION

The foregoing demonstrates that the mid-March filing deadline in Iowa Code §§ 44.4.1 and 45.4 imposes a substantial burden on minor parties in placing their candidates on the general election ballot, yet fails to advance in any rational (let alone compelling) governmental interest. A much later deadline would still permit the State to accomplish all of its electoral concerns. For these reasons, the section violates the First and Fourteenth Amendments to the United States Constitution. The Court must declare the sections invalid and enjoin their further enforcement.

*Robert M. Bastress, Jr.*

Robert M. Bastress, Jr.
West Virginia Bar ID # 263
P.O. Box 1295
Morgantown, W.Va.  26507-1295
(304) 319-0860
rmbastress@gmail.com


*Julia A. Ofenbakh*

Julia A. Ofenbakh
Iowa Defenders, PLLC
2183 86th St., Suite C
Clive, Iowa 50325
515-868-0088
julia@iowadefenders.com

Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I, Robert M. Bastress, Jr., counsel for the plaintiffs, certify that I have served the foregoing Brief in Support of Plaintiffs' Motion for Summary Judgment on counsel for the defendant, Paul D. Pate, by filing the same on the Southern District of Iowa's Pacer CM/ECF system on this the 2nd of March, 2021.

*Robert M. Bastress, Jr.*

# APPENDIX A

SELECT PROVISIONS OF THE IOWA ELECTION CODE

SELECTED IOWA ELECTION CODE PROVISIONS

43.2. Definitions

1. As used in this chapter, unless the context otherwise requires:

a. "Book", "list", "record", or "schedule" kept by a county auditor, assessor, treasurer, recorder, sheriff, or other county officer means the county system as defined in section 445.1.

b. "Political party" shall mean a party which, at the last preceding general election, cast for its candidate for president of the United States or for governor, as the case may be, at least two percent of the total vote cast for all candidates for that office at that election. It shall be the responsibility of the state commissioner to determine whether any organization claiming to be a political party qualifies as such under the foregoing definition.

2. A political organization which is not a "political party" within the meaning of subsection 1, paragraph "b," may nominate candidates and have the names of such candidates placed upon the official ballot by proceeding under chapters 44 and 45.

43.7. Time of holding

The primary election by all political parties shall be held at the usual voting places of the several precincts on the first Tuesday after the first Monday in June in each even-numbered year.

44.1. Political nonparty organizations

Any convention or caucus of eligible electors representing a political organization which is not a political party as defined by law, may, for the state, or for any division or municipality thereof, or for any county, or for any subdivision thereof, for which such convention or caucus is held, make one nomination of a candidate for each office to be filled therein at the general election. However, in order to qualify for any nomination made for a statewide elective office by such a political organization there shall be in attendance at the convention or caucus where the nomination is made a minimum of two hundred fifty eligible electors including at least one eligible elector from each of twenty-five counties. In order to qualify for any nomination to the office of United States representative there shall be in attendance at the convention or caucus where the nomination is made a minimum of fifty eligible electors who are residents of the congressional district including at least one eligible elector from each of at least one-half of the counties of the congressional district. In order to qualify for any nomination to an office to be filled by the voters of a county or of a city there shall be in attendance at the convention or caucus where the nomination is made a minimum of ten eligible electors who are residents of the county or city, as the case may be, including at least one eligible elector from at least one-half of the voting precincts in that county or city. In order to qualify for any nomination made for the general assembly there shall be in attendance at the convention or caucus where the nomination is made a minimum of ten eligible electors who are residents of the representative district or twenty eligible electors who are residents of the senatorial district, as the case may be, with at least one eligible elector from one-half of the voting precincts in the district in each case. The names of all delegates in attendance at such convention or caucus and such fact shall be

certified to the state commissioner together with the other certification requirements of this chapter.

45.1. Nominations by petition

    1. Nominations for candidates for president and vice president, governor and lieutenant governor, and for other statewide elected offices may be made by nomination petitions signed by not less than one thousand five hundred eligible electors residing in not less than ten counties of the state.

    2. Nominations for candidates for a representative in the United States house of representatives may be made by nomination petitions signed by not less than the number of eligible electors equal to the number of signatures required in subsection 1 divided by the number of congressional districts. Signers of the petition shall be eligible electors who are residents of the congressional district.

    3. Nominations for candidates for the state senate may be made by nomination petitions signed by not less than one hundred eligible electors who are residents of the senate district.

    4. Nominations for candidates for the state house of representatives may be made by nomination petitions signed by not less than fifty eligible electors who are residents of the representative district.

    5. Nominations for candidates for offices filled by the voters of a whole county may be made by nomination petitions signed by eligible electors who are residents of the county equal in number to at least one percent of the number of registered voters in the county on July 1 in the year preceding the year in which the office will appear on the ballot, or by at least two hundred fifty eligible electors who are residents of the county, whichever is less.

    6. Nominations for candidates for the office of county supervisor elected by the voters of a supervisor district may be made by nomination petitions signed by eligible electors who are residents of the supervisor district equal in number to at least one percent of the number of registered voters in the supervisor district on July 1 in the year preceding the year in which the office will appear on the ballot, or by at least one hundred fifty eligible electors who are residents of the supervisor district, whichever is less.

    7. a. Nomination papers for the offices of president and vice president shall include the names of the candidates for both offices on each page of the petition. A certificate listing the names of the candidates for presidential electors, one from each congressional district and two from the state at large, shall be filed in the state commissioner's office at the same time the nomination papers are filed.

    b. Nomination papers for the offices of governor and lieutenant governor shall include the names of candidates for both offices on each page of the petition. Nomination papers for other statewide elected offices and all other offices shall include the name of the candidate on each page of the petition.

    8. Nominations for candidates for elective offices in cities where the council has adopted nominations under this chapter may be submitted as follows:

    a. Except as otherwise provided in subsection 9, in cities having a population of three thousand five hundred or greater according to the most recent federal decennial census, nominations may be made by nomination papers signed by not less than twenty-five eligible electors who are residents of the city or ward.

b. In cities having a population of one hundred or greater, but less than three thousand five hundred, according to the most recent federal decennial census, nominations may be made by nomination papers signed by not less than ten eligible electors who are residents of the city or ward.

c. In cities having a population of less than one hundred according to the most recent federal decennial census, nominations may be made by nomination papers signed by not less than five eligible electors who are residents of the city.

9. Nominations for candidates, other than partisan candidates, for elective offices in special charter cities subject to section 43.112 may be submitted as follows:

a. For the office of mayor and alderman at large, nominations may be made by nomination papers signed by eligible electors residing in the city equal in number to at least two percent of the total vote received by all candidates for mayor at the last preceding city election.

b. For the office of ward alderman, nominations may be made by nomination papers signed by eligible electors residing in the ward equal in number to at least two percent of the total vote received by all candidates for ward alderman in that ward at the last preceding city election.

44.4. Nominations and objections--time and place of filing

1. a. Nominations made pursuant to this chapter and chapter 45 which are required to be filed in the office of the state commissioner shall be filed in that office not more than ninety-nine days nor later than 5:00 p.m. on the eighty-first day before the first Tuesday after the first Monday in June in each even-numbered year. Nominations made for a special election called pursuant to section 69.14 shall be filed by 5:00 p.m. not less than twenty-five days before the date of an election called upon at least forty days' notice and not less than fourteen days before the date of an election called upon at least eighteen days' notice. Nominations made for a special election called pursuant to section 69.14A shall be filed by 5:00 p.m. not less than twenty-five days before the date of the election. Nominations made pursuant to this chapter and chapter 45 which are required to be filed in the office of the commissioner shall be filed in that office not more than ninety-two days nor later than 5:00 p.m. on the seventy-fourth day before the first Tuesday after the first Monday in June in each even-numbered year. Nominations made pursuant to this chapter or chapter 45 for city office shall be filed not more than seventy-two days nor later than 5:00 p.m. on the forty-seventh day before the city election with the county commissioner of elections responsible under section 47.2 for conducting elections held for the city, who shall process them as provided by law.

b. Notwithstanding paragraph "a", nominations for president and vice president of the United States shall be filed in the office of the state commissioner not more than ninety-nine days nor later than 5:00 p.m. on the eighty-first day before the date of the general election to be held in November.

2. a. Objections to the legal sufficiency of a certificate of nomination or nomination petition or to the eligibility of a candidate may be filed by any person who would have the right to vote for a candidate for the office in question. The objections must be filed with the officer with whom the certificate or petition is filed and within the following time:

(1) Those filed with the state commissioner, not less than sixty-eight days before the date of the election.

(2) Those filed with the commissioner, not less than sixty-four days before the date of the election, except as provided in subparagraph (3).

(3) Those filed with the commissioner for an elective city office, at least forty-two days before the regularly scheduled or special city election. However, for those cities that may be required to hold a primary election, at least sixty-three days before the regularly scheduled or special city election.

(4) In the case of nominations to fill vacancies occurring after the time when an original nomination for an office is required to be filed, objections shall be filed within three days after the filing of the certificate.

b. Objections shall be filed no later than 5:00 p.m. on the final date for filing.

## 45.4. Filing--presumption--withdrawals--objections

The time and place of filing nomination petitions, the presumption of validity thereof, the right of a candidate so nominated to withdraw and the effect of such withdrawal, and the right to object to the legal sufficiency of such petitions, or to the eligibility of the candidate, shall be governed by the law relating to nominations by political organizations which are not political parties.

# APPENDIX B

[The following chart was compiled by Richard Winger and was published in the March, 2019, issue of *Ballot Access News*.]

## LAWSUITS WHICH ENJOINED OR OVERTURNED EARLY PETITION DEADLINES

The chart below lists court decisions that have struck down laws that force independent candidates and new parties to qualify for the ballot too early in the election process. Many state legislators have no knowledge of this area of election law. An * refers to a deadline in the year before the election year.

The chart does not include decisions concerning special elections.

Bills to move petition or filing deadlines for independent candidates, or new parties, have been introduced in 2019 in Arizona, Arkansas, Delaware, Iowa, Nevada, New Hampshire, New York, Oklahoma, and West Virginia. The only one that has passed so far is the New York bill that moved the petition deadlines from August to May. The only other one that has passed in even one house of a legislature is the Delaware bill, which moves the minor party qualifying deadline from August to early April. Although it passed the House in January, it has not moved since.

| State | Case Name | Year | Court | Citation | Type | Deadline |
|-------|-----------|------|-------|----------|------|----------|
| Ala. | New Alliance Party v Hand | 1991 | 11th circuit | 933 F.2d 1568 | New party | Apr 6 |
| Alas. | Sigler v McAlpine | 1988 | Superior | 3AN-88-8695 | New party/indp. | June 1 |
| Alas. | Sykes v McAlpine | 1990 | Superior | 3AN-90-7508 | New party/indp. | Aug. 1 |
| Alas. | Libertarian Party v Coghill | 1992 | Superior | 3AN-92-8181 | President new party | Aug. 5 |
| Ariz. | Nader v Brewer | 2011 | 9th circuit | 531 F.3d 1028 | President indp. | June 9 |
| Ark. | Lendall v Bryant | 1974 | US District | 387 F.Supp. 397 | Independent | April 2 |
| Ark. | Lendall v Jernigan | 1977 | US Supreme | 433 U.S. 901 | Independent | April 6 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Ark. | American Party v Jernigan | 1977 | US District | 424 F.Supp. 943 | New party | Mar. 7 |
| Ark. | Lendall v McKuen | 1988 | US District | LR-C-88-311 | Independent | Jan. 5 |
| Ark. | Cit. to Est. Reform Party v Priest | 1996 | US District | 970 F.Supp. 690 | New party | Jan. 2 |
| Ark. | Moore v Martin | 2018 | US District | e.d., 4:14cv-65 | Independent | Mar. 1 |
| Cal. | Calif. Justice Committee v Bowen | 2012 | US District | 2012WL 5057625 | New party | Jan. 2 |
| Ga. | Bergland v Harris | 1985 | 11th circuit | 767 F.2d 1551 | President new party | July 11 |
| Hi. | Liberrtarian Party v Waihee | 1986 | US District | cv-86-0439 | New party | Apr. 21 |
| Id. | Populist Party v Evans | 1984 | 9th circuit | 84-4108 | New party | May 30 |
| Ill. | Lee v Keith | 2006 | 7th circuit | 463 F.3d 763 | Independent | *Dec 15 |
| Ind. | Warrick v Condre | 1983 | US District | IP-83-810-C, s.d. | New party/indp. | Feb. 22 |
| Ks. | Merritt v Graves I | 1988 | US District | 87-4264-R | Independent | June 10 |
| Ky. | Libertarian Party of Ky v Ehrler | 1991 | US District | 776 F.Supp 1200 | New party/indp. | Jan. 30 |
| Me. | Anderson v Quinn | 1980 | 1st circuit | 634 F.2d 616 | President indp. | April 1 |
| Me. | Stoddard v Quinn | 1984 | US District | 593 F.Supp 300 | New party/indp. | April 1 |
| Me. | Libertarian Party v Dunlap | 2016 | US District | 2:16cv-2 | New Party | *Dec. 1 |
| Md. | Bradley v Mandel | 1978 | US District | 449 F.Supp 983 | New party/indp. | Mar. 8 |

| Md. | Anderson v Morris | 1980 | 4th circuit | 636 F.2d 55 | President indp. | Mar. 3 |
| Ma. | Serrette v Connolly | 1985 | Superior | 68172, Suffolk | New party/indp. | May 8 |
| Mo. | McCarthy v Kirkpatrick | 1976 | US District | 420 F.Supp 366 | Independent | Apr. 27 |
| Mt. | Kelly v McCulloch | 2012 | US District | cv-08-25 | Independent | Mar. 15 |
| Neb. | MacBride v Exon | 1977 | 8th circuit | 558 F.2d 443 | President new party | Feb. 11 |
| Nev. | Libt. Party of Nev. v Swackhamer | 1986 | US District | 638 F.Supp 565 | New party | Apr. 1 |
| Nev. | Fulani v Lau | 1992 | US District | CV-N-92-535 | New party/indp. | June 10 |
| N.J. | LaRouche v Burgio | 1984 | US District | 594 F.Supp 614 | President indp. | Apr. 26 |
| N.J. | Council of Alt. Parties v Hooks | 1997 | 3rd circuit | 121 F.3d 876 | New party/indp. | Apr. 10 |
| N.M. | Anderson v Hooper | 1980 | US District | 498 F.Supp 898 | President indp. | Mar. 4 |
| N.M. | Constitution Party v Duran | 2013 | US District | 1:12cv-325 | New Party | Apr. 2 |
| N.C. | Greaves v State Bd. of Elections | 2009 | US District | 508 F.Supp 78 | President indp. | Apr. 25 |
| N.D. | McLain v Meier | 1980 | 8th circuit | 637 F.2d 1159 | New party | June 1 |
| Ohio | Williams v Rhodes | 1968 | US Supreme | 393 U.S. 23 | New party | Feb. 7 |
| Ohio | Anderson v Celebrezze | 1983 | US Supreme | 460 U.S. 780 | President indp. | Mar. 20 |
| Ohio | Denny v Eyrich | 1984 | US District | C-1-84-531,s.d. | Independent | Feb. 23 |

| Ohio | Cripps v Seneca Co. Bd Election | 1985 | US District | 629 F.Supp 1335 | Independent | Feb. 21 |
| Ohio | Libt. Party of Ohio v Blackwell | 2000 | 6th circuit | 462 F.3d 579 | New party | *Nov. 3 |
| Pa. | Peoples Party v Tucker | 1972 | US District | 347 F.Supp 1 | New party/indp. | Mar. 8 |
| Pa. | Consumer Party v Tucker | 1973 | US District | 364 F.Supp 594 | New party/indp. | Mar. 28 |
| Pa. | Salera v Tucker | 1976 | US Supreme | 424 U.S. 959 | New party/indp. | Apr. 4 |
| Pa. | Libt. Party v Davis | 1984 | US District | 84-0262, m.d. | New party/indp. | Apr. 20 |
| Pa. | Hall v Davis | 1984 | US District | 84-1057, e.d. | New party/indp. | Apr. 20 |
| R.I. | McCarthy v Noel | 1976 | US District | 420 F.Supp 799 | President indp. | Aug. 12 |
| S.D. | Nader 2000 Comm. v Hazeltine | 2000 | US District | 110 F.Sup 2 1201 | President indp. | Jun 20 |
| S.D. | Libertarian Party of SD v Kundert | 1983 | US District | civ-83-3071 | New party | Mar. 15 |
| S.D. | Libertarian Part v Krebs | 2018 | US District | 4:15cv-4111 | New party | Mar. 27 |
| Tn. | Libertarian Party of Tn v Goins | 2010 | US District | 793 FSup 2d 1064 | New party | Mar. 10 |
| Tn. | Green Party of Tn. v Hargett | 2012 | US District | 992 FSup 2d 959 | New party | Apr. 5 |
| Ut. | LaRouche v Monson | 1984 | US District | 599 F.Supp 621 | President indp. | Apr. 15 |