IN THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA

IOWA LIBERTARIAN PARTY and
JAKE PORTER,

Plaintiffs,

VS.                                    Civil Action No.  4:19-cv-00241-SMR-HCA

PAUL D. PATE, Secretary of State
and State Commissioner of Elections,

Defendant.

# JOINT APPENDIX

Jeffrey S. Thompson
Solicitor General of Iowa
Thomas J. Ogden
Assistant Attorney General
Iowa Department of Justice
1305 East Walnut St.
Des Moines, Iowa 50319
515-281-5976
Jeffrey.Thompson@ag.iowa.gov
Thomas.Ogden@ag.iowa.gov

Counsel for Defendant

Robert M. Bastress
West Virginia Bar ID # 263
P.O. Box 1295
Morgantown, W.Va.  26507-1295
(304) 293-5308
rmbastress@gmail.com

Julia A. Ofenbakh
Iowa Defenders, PLLC
2183 86th St., Suite C
Clive, Iowa 50325
515-868-0088
julia@iowadefenders.com

Counsel for Plaintiffs

TABLE OF CONTENTS

Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Answer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Deposition of Molly Widen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Deposition of Richard Winger . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Richard Winger CV (Exhibit 1 to Winger Deposition) . . . . . . . . . . . . . . . . . . . 31

Deposition of William Redpath . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Affidavit of Jake Porter (unsigned). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Affidavit of Jake Porter (signed). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

IN THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA

IOWA LIBERTARIAN PARTY and
JAKE PORTER,

        Plaintiffs,

VS.

        Civil Action No.  4:19-cv-00241

PAUL D. PATE, Secretary of State
and State Commissioner of Elections,

        Defendant.

## COMPLAINT

For their claims for relief, plaintiffs state as follows:

### JURISDICTION

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343.

### PARTIES

2.   The Iowa Libertarian Party is an unincorporated, Des Moines-based "nonparty political organization" under Iowa Code Chapter 44 that has sponsored, sponsors, and intends to continue to sponsor candidates in Iowa elections who support the Party's libertarian ideals.

3. Plaintiff Jake Porter is a citizen and resident of Council Bluffs, Pottawattamie County, Iowa, and intends to run in the 2020 election as the Libertarian Party candidate for United States

1

Senator; he has previously run as a Libertarian candidate for Iowa Secretary of State and Governor.

4. Paul D. Pate is the Secretary of State for the State of Iowa and, as such and pursuant to Iowa Code § 47.1, is the Iowa State Commissioner of Elections and is thereby charged with oversight of Iowa's elections and enforcement of the State's election laws; he is sued in his official capacities.

## FACTS

5. A "political party" is defined by Iowa law as a party whose candidate for president or governor, as the case may be, received at least two percent of the total vote cast for that office in the last general election. Iowa Code § 43.2.1.b.

6. A political party nominates its candidates at the primary election, which is held on the first Tuesday after the first Monday in each even-numbered year; that is, between June 2 and 8 of an election year. Iowa Code § 43.7.

7. A political organization that did not poll at least two percent of the presidential or gubernatorial votes in the most recent general election is classified by Iowa as a "nonparty political organization." Iowa Code Chapter 44.

8. To run candidates as a nonparty political organization, plaintiff Libertarian Party may nominate one candidate for each office through a convention or caucus that has the participation of at least two hundred fifty voters and at least one eligible elector from each of at least twenty-five counties in the State. Iowa Code Ann. § 44.1.

9. During its 2019 session, the Iowa Legislature amended Iowa Code § 44.4 to require that nonparty political organizations' nominations made pursuant to Iowa Code § 44.1 must be filed with the defendant no "later than 5:00 P.M. on the eighty-first day before the first Tuesday after the first

2

Monday in June in each even-numbered year;" that is, the filing deadline for nonparty political organizations falls between March 14[th] and 20[th] preceding a primary election.

10.   The filing deadline for the Iowa Libertarian Party for the 2020 general election will be March 14, 2020, while the general election will not be until November 3, 2020.

11.   The filing deadline for nominations from nonparty political organizations in Iowa Code § 44.4 had previously been the seventy-third day before the date of the general election to be held in November; that is, the third or fourth week in August.

12.   A filing deadline in mid-March imposes heavy burdens on nonparty political organizations including, but not limited to, the following:

– It handicaps minor parties from reacting to later breaking changes in the political landscape, including later emerging major party candidacies;

– It hampers the recruitment of convention and caucus participants because of the early uncertainties that arise in any campaign season;

– That early in a campaign, volunteers are more difficult to recruit and retain, media coverage and campaign contributions are more difficult to secure, and voters are less interested in the elections;

– The Party will be locked into the candidates they nominate in March regardless of subsequent developments and disclosures concerning the major party candidates and their races, the Party's own candidates, other minor party and independent candidates, or any other state and national developments that could affect campaigns.

13.   Members of the plaintiff Iowa Libertarian Party vote and associate to promote Libertarian ideals and candidates, as do supporters of plaintiff Porter, and their efforts to advance

3

their causes are substantially burdened by the mid-March filing deadline in Iowa Code § 44.4.

14. No legitimate state interest justifies the burdens placed on the plaintiffs, on the Iowa Libertarian Party members and supporters of plaintiff Porter, and on other minor political parties and their candidates by Iowa's mid-March filing deadline.

15. Under Iowa law, political parties – as opposed to noparty political organizations – may fill vacancies on their tickets up to "5:00 p.m. on the sixty-ninth day before the date of the general election" or, that is, in late August of an election year. Iowa Code § 43.78.

16. No legitimate state interest justifies the differential and adverse treatment accorded nonparty political organizations in Iowa Code § 44.4 as compared to the treatment provided political parties in Iowa Code § 43.78.

## CLAIMS FOR RELIEF

17. Iowa's mid-March deadline set forth in Iowa Code § 44.4 for the nomination of nonparty political organizations' candidates for the November general election violates plaintiffs' rights protected by the First and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983.

18. Iowa's mid-March deadline set forth in Iowa Code § 44.4 for the nomination of nonparty political organizations' candidates for the November general election violates fundamental voting and associational rights of Iowa Libertarian Party members and of the supporters of plaintiff Porter, rights that are protected by the First and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983.

19. Iowa's requirement that plaintiff Iowa Libertarian Party file its final nominations in mid-March of an election year while allowing "political parties" to file their nominations as late as sixty

4

-nine days before the November general elections violates the plaintiffs' right to equal protection of the law as guaranteed by the Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983.

## RELIEF REQUESTED

Plaintiffs therefore request the following relief:

A. A declaratory judgment holding that Iowa Code § 44.4 violates the plaintiffs' rights protected by the First and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983;

B. A declaratory judgment holding that Iowa Code § 44.4 violates the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 by suppressing associational and voting rights of the members of the Iowa Libertarian Party and of the supporters of plaintiff Jake Porter;

C. A declaratory judgment that Iowa's discriminatory treatment of nonparty political organizations by Iowa Code § 44.4 requiring nominations to be filed in mid-March while permitting political parties to file nominations in late August of an election year violates the rights of the plaintiffs and the members of the Iowa Libertarian Party to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983;

D. An injunction against the defendant forbidding him from enforcing the March deadline set forth in Iowa Code § 44.4 against the plaintiffs;

E. An order awarding plaintiffs their reasonable attorneys' fees and costs;

F. All other relief to which the Court shall deem the plaintiffs to be entitled.

5

/s/ *Robert M. Bastress, Jr.*
Robert M. Bastress, Jr.
West Virginia Bar ID # 263
P.O. Box 1295
Morgantown, W.Va. 26507-1295
(304) 319-0860
rmbastress@gmail.com


/s/ *Julia A. Ofenbakh*
Julia A. Ofenbakh
Iowa Defenders, PLLC
2183 86th St., Suite C
Clive, Iowa 50325
515-868-0088
julia@iowadefenders.com

Counsel for Plaintiffs


## CERTIFICATE

I, Julia A. Ofenbakh, certify that I have provided a notice of constitutional question to the
Attorney General of Iowa, Tom Miller, as required by Federal Rule of Civil Procedure 5.1


/s/ *Julia A. Ofenbakh*

6

000006

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| IOWA LIBERTARIAN PARTY and JAKE PORTER, | Case No. 4:19-cv-00241 |
| Plaintiffs, | |
| v. | **ANSWER** |
| PAUL D. PATE, Secretary of State and State Commissioner of Elections, | |
| Defendant. | |

COMES NOW Defendant Iowa Secretary of State Paul Pate and sets forth below answers to Plaintiffs' verified complaint for declaratory and injunctive relief. Each and every allegation of this complaint is denied unless expressly admitted.

### JURISDICTION

1. Defendant admits paragraph 1.

### PARTIES

2. Paragraph 2 is denied for lack of information.

3. Paragraph 3 is denied for lack of information.

4. Defendant admits paragraph 4.

### FACTS

5. Paragraph 5 is neither admitted or denied. The statute speaks for itself.

6. Paragraph 6 is neither admitted or denied. The statute speaks for itself.

7. Paragraph 7 is neither admitted or denied. The statute speaks for itself.

8. The statute speaks for itself. The remainder of paragraph 8 is denied for lack of information.

9. Paragraph 9 is neither admitted or denied. The statute speaks for itself.

10. Paragraph 10 is admitted.

11. Paragraph 11 is neither admitted or denied. The statute speaks for itself.

12. Paragraph 12 is denied.

13. Paragraph 13 is denied.

14. Paragraph 14 is denied.

15. Paragraph 15 is neither admitted or denied. The statute speaks for itself.

16. Paragraph 16 is denied.

## CLAIMS FOR RELIEF

17. Paragraph 17 is denied.

18. Paragraph 18 is denied.

19. Paragraph 19 is denied.

## AFFIRMATIVE DEFENSES

20. Plaintiffs lack standing.

21. Plaintiffs failed to state a claim upon which relief can be granted.

22. Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of laches, estoppel, and/or unclean hands.

23. Any harm to Plaintiffs resulted from their own acts or omissions for which Defendant is not responsible.

24. Pending further discovery, Defendant reserves the right to plead additional defenses as necessary.

WHEREFORE, Defendant respectfully requests that this matter be dismissed with all costs and attorney fees taxed to the Plaintiffs. Defendant requests such other and further relief as may

2

be deemed appropriate by the Court.

/s/  Jeffrey  S. Thompson
JEFFREY S. THOMPSON
Solicitor General of Iowa

/s/  Thomas  J. Ogden
THOMAS J. OGDEN
Assistant Attorneys General
Iowa Department of Justice
Hoover State Office Bldg., 2nd Fl.
1305 East Walnut Street
Des Moines, Iowa 50319
Phone: (515) 281-5976
Fax: (515) 281-4902
Email: Jeffrey.Thompson@ag.iowa.gov
Email: Thomas.Ogden@ag.iowa.gov

ATTORNEYS FOR DEFENDANT
THOMAS MILLER

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2019, a true and correct copy of the foregoing was

filed electronically via the Court's ECF system which will notify each of the following

participants:

Julia Ofenbakh
IOWA DEFENDERS, PLLC
2183 86th Street, Suite C
Clive, Iowa 50325
Email: julia@iowadefenders.com

Robert M. Bastress, Jr.
P.O. Box 1295
Morgantown, W. Va 26507
Email: rmbastress@gmail.com

ATTORNEYS FOR PLAINTIFF

*Thomas J. Ogden*

3

000009

Iowa Libertarian Party v. Pate

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

IOWA LIBERTARIAN PARTY          No. 4:19-cv-00241
and JAKE PORTER,

    Plaintiffs,

v.

PAUL D. PATE, Secretary
of State and State
Commissioner of Elections,

    Defendant.

ZOOM DEPOSITION of MOLLY M. WIDEN, taken
on behalf of the Plaintiff, reported by Jody
Malloy, CSR, RMR, starting at 9:04 a.m. on
August 4, 2020.

**Page 3**

```
 1                    INDEX
 2                MOLLY WIDEN
 3                EXAMINATION
 4   By Mr. Bastress ......................... 4-16
 5   By Ms. Ofenbakh ........................ 16-17
     By Mr. Bastress ........................ 17-18
 6
 7
 8                 EXHIBITS
 9
10                  (none)
11
12   Adjournment at 9:30 a.m. ................... 18
13   Certificate of Reporter ................... 19
14   Errata Page of Witness .................... 20
15
16
17
18
19
20
21
22
23
24
25
```

**Page 2**

```
 1                 APPEARANCES
 2   Robert M. Bastress, Jr.
     Attorney at Law
 3   PO Box 1295
     Morgantown, W.VA 26507-1295
 4
 5   and
 6   Julia A. Ofenbakh
     Iowa Defenders, PLLC
 7   2186 86th Street, Suite C
     Clive, IA 59325
 8             On behalf of the Plaintiffs
 9   Matthew L. Gannon
     Assistant Iowa Attorney General
10   1305 E. Walnut Street
     Des Moines, IA 50319
11             On behalf of the Defendants
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
 1                    * * *
 2                MOLLY WIDEN,
 3   having been first duly sworn, was examined and
 4   testified as follows:
 5                EXAMINATION
 6   BY MR. BASTRESS:
 7       Q.  Would you state your name, please?
 8       A.  My full name is Molly Marie Hammer
 9   Widen.
10       Q.  And where do you live, Molly?
11       A.  I live in Ankeny, Iowa.
12       Q.  I'm sorry.  Where?
13       A.  Ankeny, Iowa.
14       Q.  All right.  And what is your current
15   employment?
16       A.  I serve as legal counsel to the Iowa
17   Secretary of State.
18       Q.  Oh, okay.  And you have designated
19   responsibilities in that capacity?
20       A.  Yes.
21       Q.  What are they?
22       A.  So I work with our elections division.
23   I offer assistance and guidance for our
24   elections technicians.  Additionally, I serve as
25   one of the office's lobbyists in front of the
```

000010

5

1  legislature.
2      Q.  Okay.  Is your primary focus then
3  subject matterwise on elections?
4      A.  Yes.
5      Q.  And the Secretary of State is the
6  chief elections officer in Iowa; is that
7  correct?
8      A.  That's correct.
9      Q.  Okay.  And I assume in your position
10  then you are knowledgeable about the Iowa laws
11  relating to elections and their conduct.
12      A.  Yes.
13      Q.  How long have you been in your current
14  position?
15      A.  I started on February 9th of 2018.
16      Q.  Okay.  In Iowa, as I understand it,
17  you have designated political parties defined
18  basically as a party which holds a certain
19  percentage of the vote in statewide election.
20  Then you have non-party political organizations.
21  Is that correct?
22      A.  That is correct, yes.
23      Q.  And how would you describe the
24  difference between those two?
25      A.  So a political party is an

7

1      Q.  Okay.  And when do they have to submit
2  those signatures?
3      A.  By a filing deadline sometime in early
4  March.
5      Q.  Okay.  And when is your primary for
6  U.S. Senate?
7      A.  The first Tuesday after the first
8  Monday in June in even-numbered years.
9      Q.  And if nobody files for a particular
10  office, let's say a statewide office, let's say
11  Secretary of State, no Republican files to run
12  in the primary, can the Republicans fill in that
13  slot for the general election?
14      A.  Yes, they can.
15      Q.  How do they do that?
16      A.  At their statewide convention.
17      Q.  They would nominate a particular
18  candidate at their statewide convention?
19      A.  Correct.  Yes.
20      Q.  Is there a deadline for the party to
21  do that?
22      A.  Yes, there is.
23      Q.  What is it?
24      A.  I can -- I could tell you specifically
25  if I was able to look at our elections calendar,

6

1  organization that receives at least 2 percent of
2  the vote for their candidate for president or
3  governor in a general election.
4      Q.  Okay.  And the non-party political
5  organizations would be all others, all other
6  political parties?
7      A.  Correct.  Yes.
8      Q.  What would be the path -- Oh, are
9  there any political parties in Iowa currently
10  other than Democrats and Republicans?
11      A.  Not currently, no.
12      Q.  What would be the path to the general
13  election ballot for a Democrat or a Republican
14  currently?
15      A.  For what level of office?
16      Q.  Let's say U.S. Senator.
17      A.  So U.S. Senate, so they have to have a
18  certain percentage of signatures from a certain
19  number of counties -- I think it's 15 -- in
20  order to get on the ballot, so they have to
21  collect a certain number of signatures.
22      Q.  For Democrats and Republicans?
23      A.  Correct.
24      Q.  To get on the primary ballot?
25      A.  Correct.

8

1  but it's a deadline sometime in late August.
2      Q.  Okay.  Does that happen very often in
3  Iowa that a statewide office would be empty?
4      A.  So in Iowa we have a threshold for
5  primary candidates.  They have to receive at
6  least 35 percent of the vote.  In 2018 none of
7  the -- there's either six or seven Republican
8  candidates for Secretary of Agriculture met that
9  threshold, so they did nominate a candidate at
10  their convention.
11      Q.  Okay.
12      A.  And it happens actually pretty
13  routinely every couple of years, I would say.
14      Q.  Okay.  I noticed in reviewing the Iowa
15  Election Code there's a rather bewildering array
16  of deadlines and so forth that candidates have
17  to meet.  Do you have -- Does your office
18  have -- the Secretary of State's office have
19  some sort of chart or guidebook for candidates
20  to figure out what their deadlines are?
21      A.  Yes.  We create two separate
22  guidebooks, one for candidates who will
23  participate in a primary and one for candidates
24  who will participate in the general election,
25  and it includes all of the relevant dates and

9

1   deadlines.
2        Q.   Okay.
3        A.   And it's available on our website
4   typically five or six months at least before the
5   filing period begins.
6        Q.   And what's your website?
7        A.   Sos.Iowa.gov.
8        Q.   Okay.  Are you familiar with the
9   section which is basically at issue in this
10  litigation, Iowa Code Section 44.4?
11       A.   Yes.
12       Q.   Okay.  Which specifies essentially a
13  mid-March filing deadline.  Oh, I didn't ask you
14  and let's do that first.  A non-party political
15  organization's path to the general election
16  ballot then is what?
17       A.   So they have options as an NPPO.  They
18  can either collect signatures and submit them or
19  they could go through a convention process, so
20  they actually have two ways to get on the
21  ballot.
22       Q.   Okay.  If they proceed by the
23  signature process, is there a deadline for
24  filing those petitions?
25       A.   Yes.  It's sometime in mid-March.

10

1        Q.   Okay.  And is there a deadline on the
2   convention nomination process?
3        A.   It's the same time frame.
4        Q.   Okay.  And that's the time frame set
5   by Section 44.4?
6        A.   Yes.
7        Q.   Which is 81 days before the primary
8   essentially, correct?
9        A.   Yep.
10       Q.   Okay.
11       A.   That sounds right.
12       Q.   Do you know when that particular
13  deadline was enacted into law?
14       A.   I believe it became effective on
15  July 1st of 2019.
16       Q.   Okay.  Do you know what the previous
17  deadline was for those filings?
18       A.   It was -- It was in August.  I don't
19  remember, but it would have been so many days
20  before the general election, but it was sometime
21  in August.
22       Q.   Do you know for how long Iowa had an
23  August deadline for that filing?
24       A.   I do not, no.
25       Q.   Do you know why the change was made to

11

1   March?
2        A.   So the change did not originate from
3   the Secretary of State's office.  That was a
4   change that was added to a bill about
5   Intelligent Mail barcodes by a legislator.
6        Q.   A bill about what?
7        A.   Intelligent Mail barcodes.
8        Q.   Intelligent Mail barcodes, is that
9   what you said?
10       A.   Yes.
11       Q.   Okay.  What are they, by the way?
12       A.   Iowa is the only state in the country
13  that utilizes Intelligent Mail barcode tracking
14  technology to see when absentee ballots enter
15  the mail stream.
16       Q.   Oh, okay.  Did you participate in the
17  enactment of the change in the deadline for
18  non-political parties?
19       A.   I didn't vote on it in the sense that
20  I'm not a legislator.  There were election
21  matters in the bill, so I did follow it as a
22  lobbyist.
23       Q.   Okay.  Did the Secretary of State's
24  office have a position on the change in the
25  deadline?

12

1        A.   I believe that our official
2   registration on the bill as a whole was
3   undecided.
4        Q.   So the Secretary didn't take a
5   position either way.
6        A.   No.
7        Q.   Okay.  So do you know what the purpose
8   was in the change?  What was it trying to
9   accomplish, in other words?
10       A.   My only understanding in speaking with
11  legislative staff is that it was for uniformity.
12       Q.   Uniformity with regards to what?
13       A.   Lining up all of the filing deadlines
14  to occur at the same time.
15       Q.   For the major political parties as
16  well as the non-political party organizations?
17  Is that what you mean?
18       A.   Correct.  Yes.
19       Q.   Had there been any problems created by
20  the August deadline?
21       A.   So not that I'm aware of, but I
22  haven't been through very many filing periods in
23  the Secretary of State's office, but we didn't
24  report any issues.
25       Q.   What is the -- or what was the

13

1  legislative perception that there was some value
2  to achieving this uniformity as between the
3  major and minor political parties regarding
4  their deadline?
5      A.  I'm not -- I'm not sure.  House File
6  692 was a really large bill and so there was a
7  lot going on in that bill, so I really never had
8  any conversation -- too many conversations about
9  this piece specifically.
10     Q.  So was this -- I think you mentioned
11 this, but I'm not sure.  Was this new deadline
12 added as an amendment?  Was that your
13 description?
14     A.  Correct.  It was part of an amendment.
15     Q.  So there was sort of this omnibus bill
16 related to various aspects of elections and this
17 was stuck in there; is that correct?
18     A.  Yes.  It was part of a larger bill.
19     Q.  Are you aware of any need for a March
20 deadline other than this uniformity goal?
21     A.  Again, like I said, this piece didn't
22 come from the Secretary of State's office.
23     Q.  Right, but are you aware of any reason
24 why the March deadline promotes any aspect of
25 election accuracy, efficiency, conduct,

14

1  et cetera?
2      A.  I mean, it does allow us to do the
3  whole entire filing period at once instead of
4  having to do it twice.
5      Q.  And that accomplishes what?
6      A.  So the filing period is basically an
7  all-hands-on-deck time in our office.  It takes
8  all of our election staff in order to get it
9  accomplished; and we actually from time to time
10 have to hire additional outside staff, so this
11 does allow us to accomplish the filing period in
12 just one 3-week period versus having to do it
13 twice.
14     Q.  But whether it's once or twice, you'd
15 still be processing the same number of candidate
16 petitions, processes, et cetera, right?
17     A.  That's correct.  Yes.
18     Q.  And you'd still have to process
19 whatever candidates are nominated in the major
20 party conventions in August; is that correct?
21     A.  We would.  That's -- There's a big
22 difference between the processing time, though.
23 For those, we're talking about looking over a
24 one-page convention certificate.  With other
25 candidates petitions we're talking about

15

1  counting hundreds, if not thousands, of
2  signatures.
3      Q.  Right.  So you have to do that for the
4  major party primary candidates in March; is that
5  correct?
6      A.  Yes.  Yep.
7      Q.  And then by setting the deadline in
8  March, you're just -- you also have to do it at
9  that same time for the minor political parties.
10     A.  Yep.
11     Q.  Rather than having a March petition
12 period and an August petition period for
13 processing signatures.
14     A.  Correct.
15     Q.  So you personally have been through
16 this process, what, once in terms of an election
17 cycle?
18     A.  Three times.
19     Q.  Three times.  Okay.  2018 and 2020?
20 Was there an election in 2019?
21     A.  2016.  I worked in the office before
22 I took my current role.
23     Q.  Oh, I'm sorry.  Okay.  So how long
24 have you been in the office?
25     A.  I started when I was still in law

16

1  school in August of 2015.
2      Q.  Okay.  Does the Secretary of State's
3  office have a position on retaining this March
4  deadline as opposed to an August deadline?
5      A.  No.
6      Q.  And it did not lobby one way or the
7  other when this was enacted in 2019?
8      A.  No.
9          MR. BASTRESS:  I think those are
10 all my questions.  Matt, ordinarily I know
11 counsel don't like to pass batons between one
12 counsel and another, but I can't really talk to
13 Jules privately at this point.  Could I ask her
14 if she has any questions?  Would you object?
15         MR. GANNON:  Under the
16 circumstances, that's more than fair.
17         MR. BASTRESS:  Jules, do you have
18 any questions?
19         MS. OFENBAKH:  Yes.
20              EXAMINATION
21 BY MS. OFENBAKH:
22     Q.  Good morning.  I just have a brief
23 question.  Molly, the presidential petitions,
24 when are they due for all the parties?
25     A.  So obviously political parties don't

Iowa Libertarian Party v. Pate

17

1  submit signatures for their presidential
2  candidates. They turn over the official
3  certificate from their national conventions.
4          For presidential candidates that
5  are going to get on the ballot via the signature
6  requirement, I think the deadline is next
7  Friday. I think it's August 14th.
8      Q. In other words, your office will still
9  need to count petitions in August?
10     A. If anybody turns one in.
11         MS. OFENBAKH: Thank you.
12         MR. BASTRESS: Matt, I have one
13  more query, actually.
14             EXAMINATION
15  BY MR. BASTRESS:
16     Q. Ms. Widen, what function do the Iowa
17  caucuses -- presidential caucuses play other
18  than generate revenues for Iowa?
19     A. So the caucuses are wholly run by the
20  parties, and the Secretary of State's office and
21  the state have no involvement.
22     Q. Okay. That was a frivolous question,
23  but I was curious.
24         MR. BASTRESS: All right. I have
25  nothing else. Matt, do you have anything?

18

1          MR. GANNON: I do not have any
2  questions.
3          MR. BASTRESS: Okay. Do you want
4  to advise Ms. Widen as to her rights to read and
5  sign?
6          MR. GANNON: Sure.
7          Molly, you will be provided a
8  transcript that you can go over and make any
9  corrections to the errata by the court reporter.
10         THE WITNESS: Okay. Excellent.
11         COURT REPORTER: So you do want
12  to read and sign?
13         MR. GANNON: We will, sure.
14  Yeah, that's fine. It's short. I'm sure it
15  will be no problem.
16         MR. BASTRESS: Well, then I think
17  that concludes the deposition.
18             * * *
19         (The testimony ended at 9:25 a.m.)
20
21
22
23
24
25

19

1                CERTIFICATE
2          I, Jody L. Malloy, Certified Shorthand
3  Reporter of the State of Iowa, do hereby certify
4  that the deponent was duly sworn by me, and that
5  the transcript as above set forth is a true and
6  accurate record of the testimony.
7          That the within and foregoing
8  deposition was taken by me at the time and place
9  herein specified.
10         That the witness requested to read and
11  sign the deposition.
12         That I am not counsel, attorney, or
13  relative of either party or otherwise interested
14  in the event of this suit.
15         IN TESTIMONY WHEREOF, I have hereunto
16  placed my hand August 10, 2020.
17
18             /s/ Jody L. Malloy
19             _____
20             JODY L. MALLOY, CSR, RMR
21
22
23
24
25

20

1              SIGNATURE PAGE
2
3      I, Molly Widen, do hereby state that I have
4  read my deposition and that I have noted the
5  changes as indicated below:
6
7  DATE _____        WITNESS _____
8
9  PAGE ____ LINE ____
10 CHANGE: _____
11 PAGE ____ LINE ____
12 CHANGE: _____
13 PAGE ____ LINE ____
14 CHANGE: _____
15 PAGE ____ LINE ____
16 CHANGE: _____
17 PAGE ____ LINE ____
18 CHANGE: _____
19 PAGE ____ LINE ____
20 CHANGE: _____
21 PAGE ____ LINE ____
22 CHANGE: _____
23 PAGE ____ LINE ____
24 CHANGE: _____
25

BY MR. BASTRESS: [2] 4/5 17/14
BY MS. OFENBAKH: [1] 16/20
COURT REPORTER: [1] 18/10
MR. BASTRESS: [6] 16/8 16/16 17/11 17/23 18/2 18/15
MR. GANNON: [4] 16/14 17/25 18/5 18/12
MS. OFENBAKH: [2] 16/18 17/10
THE WITNESS: [1] 18/9

**/**
/s [1] 19/18

**0**
00241 [1] 1/3

**1**
10 [1] 19/16
1295 [2] 2/3 2/3
1305 [1] 2/10
14th [1] 17/7
15 [1] 6/19
18 [1] 3/4
16-17 [1] 3/4
17 [1] 3/4
17-18 [1] 3/5
18 [2] 3/5 3/12
19 [1] 3/13
1st [1] 10/15

**2**
2 percent [1] 6/1
20 [1] 3/14
2015 [1] 16/1
2016 [1] 15/21
2018 [3] 5/15 8/6 15/19
2019 [3] 10/15 15/20 16/7
2020 [3] 1/16 15/19 19/16
2186 [1] 2/6
26507-1295 [1] 2/3

**3**
3-week [1] 14/12
35 percent [1] 8/6

**4**
4-16 [1] 3/4
44.4 [2] 9/10 10/5
4:19-cv-00241 [1] 1/3

**5**
50319 [1] 2/10
59325 [1] 2/7

**6**
692 [1] 13/6

**8**
81 [1] 10/7
86th [1] 2/6

**9**
9:04 a.m [1] 1/15
9:25 a.m [1] 18/19
9:30 [1] 3/12

**A**
a.m [3] 1/15 3/12 18/19
able [1] 7/25
above [1] 19/5

absentee [1] 11/14
accomplish [2] 12/9 14/11
accomplished [1] 14/9
accomplishes [1] 14/5
accuracy [1] 13/25
accurate [1] 19/6
achieving [1] 13/2
actually [4] 8/12 9/20 14/9 17/13
added [2] 11/4 13/12
additional [1] 14/10
Additionally [1] 4/24
Adjournment [1] 3/12
advise [1] 18/4
Again [1] 13/21
Agriculture [1] 8/8
all [10] 4/14 6/5 6/5 8/25 12/13 14/7 14/8 16/10 16/24 17/24
all-hands-on-deck [1] 14/7
allow [2] 14/2 14/11
amendment [3] 13/12 13/14
Ankeny [2] 4/11 4/13
another [1] 16/12
anybody [1] 17/10
anything [1] 17/25
APPEARANCES [1] 2/1
array [1] 8/15
ask [2] 9/13 16/13
aspect [1] 13/24
aspects [1] 13/16
assistance [1] 4/23
Assistant [1] 2/9
assume [1] 5/9
attorney [3] 2/2 2/9 19/12
August [13] 1/16 8/1 10/18 10/21 10/23 12/20 14/20 15/12 16/1 16/4 17/7 17/9 19/16
August 14th [1] 17/7
August 4 [1] 1/16
available [1] 9/3
aware [3] 12/21 13/19 13/23

**B**
ballot [6] 6/13 6/20 6/24 9/16 9/21 17/5
ballots [1] 11/14
barcode [1] 11/13
barcodes [3] 11/5 11/7 11/8
basically [3] 5/18 9/9 14/6
Bastress [3] 2/2 3/4 3/5
batons [1] 16/11
became [1] 10/14
begins [1] 9/5
behalf [3] 1/14 2/7 2/11
believe [2] 10/14 12/1
below [1] 20/5
between [2] 5/24 13/2 14/22 16/11
bewildering [1] 8/15
big [1] 14/21
bill [8] 11/4 11/6 11/21 12/2 13/6 13/7 13/15 13/18
Box [1] 2/3
brief [1] 16/22

**C**
calendar [1] 7/25
can [5] 7/12 7/14 7/24 9/18 18/8
can't [1] 16/12
candidate [4] 6/2 7/18 8/9 14/15
candidates [11] 8/5 8/8 8/16 8/19 8/22 8/23 14/19 14/25 15/4

17/2 17/4
capacity [1] 4/19
caucuses [3] 17/17 17/17 17/19
CENTRAL [1] 1/2
certain [4] 5/18 6/18 6/18 6/21
certificate [4] 3/13 14/24 17/3 19/1
Certified [1] 19/2
certify [1] 19/3
cetera [2] 14/1 14/16
change [14] 10/25 11/2 11/4 11/17 11/24 12/8 20/9 20/11 20/13 20/15 20/17 20/19 20/21 20/23
changes [1] 20/5
chart [1] 8/19
chief [1] 5/6
circumstances [1] 16/16
Clive [1] 2/7
Code [2] 8/15 9/10
collect [2] 6/21 9/18
come [1] 13/22
Commissioner [1] 1/8
concludes [1] 18/17
conduct [2] 5/11 13/25
convention [6] 7/16 7/18 8/10 9/19 10/2 14/24
conventions [2] 14/20 17/3
conversation [1] 13/8
conversations [1] 13/8
correct [16] 5/7 5/8 5/21 5/22 6/7 6/23 6/25 7/19 10/8 12/18 13/14 13/17 14/17 14/20 15/5 15/14
corrections [1] 18/9
could [3] 7/24 9/19 16/13
counsel [4] 4/16 16/11 16/12 19/12
count [1] 17/9
counties [1] 6/19
counting [1] 15/1
country [1] 11/12
couple [1] 8/13
court [2] 1/1 18/9
create [1] 8/21
created [1] 12/19
CSR [2] 1/15 19/20
curious [1] 17/23
current [3] 4/14 5/13 15/22
currently [1] 6/9 6/11 6/14
cv [1] 1/3
cycle [1] 15/17

**D**
DATE [1] 20/6
dates [1] 8/25
days [2] 10/7 10/19
deadline [20] 7/3 7/20 8/1 9/13 9/23 10/1 10/13 10/17 10/23 11/17 11/25 12/20 13/4 13/11 13/20 13/24 15/7 16/4 16/4 17/6
deadlines [4] 8/16 8/20 9/1 12/13
deck [1] 14/7
Defendant [1] 1/9
Defendants [1] 2/11
Defenders [1] 2/12
defined [1] 5/17
Democrat [1] 6/13
Democrats [2] 6/10 6/22
deponent [1] 19/4
deposition [5] 1/13 18/17 19/8 19/11 20/4

Des [1] 2/10
describe [1] 5/23
description [1] 13/13
designated [2] 4/18 5/17
did [6] 8/9 11/2 11/16 11/21 11/23 16/6
didn't [5] 9/13 11/19 12/4 12/23 13/21
difference [2] 5/24 14/22
DISTRICT [2] 1/1 1/1
division [2] 1/2 4/22
due [1] 16/24
duly [2] 4/3 19/4

**E**
early [1] 7/3
effective [1] 10/14
efficiency [1] 13/25
either [4] 8/7 9/18 12/5 19/13
election [13] 5/19 6/3 6/13 7/13 8/15 8/24 9/15 10/20 11/20 13/25 14/8 15/16 15/20
elections [8] 1/8 4/22 4/24 5/3 5/6 5/11 7/25 13/16
employment [1] 4/15
empty [1] 8/3
enacted [2] 10/13 16/7
enactment [1] 11/17
ended [1] 18/19
enter [1] 11/14
entire [1] 14/3
errata [2] 3/14 18/9
essentially [2] 9/12 10/8
et [2] 14/1 14/16
et cetera [2] 14/1 14/16
even [1] 7/8
even-numbered [1] 7/8
event [1] 19/14
every [1] 8/13
EXAMINATION [4] 3/3 4/5 16/20 17/14
examined [1] 4/3
Excellent [1] 18/10
EXHIBITS [1] 3/8

**F**
fair [1] 16/16
familiar [1] 9/8
February [1] 5/15
February 9th of [1] 5/15
figure [1] 8/20
File [1] 13/5
files [2] 7/9 7/11
filing [10] 7/3 9/5 9/13 9/24 10/23 12/13 12/22 14/3 14/6 14/11
filings [1] 10/17
fill [1] 7/12
fine [1] 18/14
first [4] 4/3 7/7 7/7 9/14
five [1] 9/4
focus [1] 5/2
follow [1] 11/21
follows [1] 4/4
foregoing [1] 19/7
forth [2] 8/16 19/5
frame [2] 10/3 10/4
Friday [1] 17/7
frivolous [1] 17/22
front [1] 4/25
full [1] 4/8
function [1] 17/16

**G**
general [7]  2/9 6/3 6/12 7/13 8/24 9/15 10/20
generate [1]  17/18
goal [1]  13/20
Good [1]  16/22
governor [1]  6/3
guidance [1]  4/23
guidebook [1]  8/19
guidebooks [1]  8/22

**H**
Hammer [1]  4/8
hand [1]  19/16
hands [1]  14/7
happen [1]  8/2
happens [1]  8/12
have [35]
herein [1]  19/9
hereunto [1]  19/15
hire [1]  14/10
holds [1]  5/18
House [1]  13/5
hundreds [1]  15/1

**I**
I took [1]  15/22
I'm [8]  4/12 11/20 12/21 13/5 13/5 13/11 15/23 18/14
IA [2]  2/7 2/10
includes [1]  8/25
INDEX [1]  3/1
indicated [1]  20/5
instead [1]  14/3
intelligent [4]  11/5 11/7 11/8 11/13
interested [1]  19/13
involvement [1]  17/21
IOWA [20]  1/1 1/3 2/6 2/9 4/11 4/13 4/16 5/6 5/10 5/16 6/9 8/3 8/4 8/14 9/10 10/22 11/12 17/16 17/18 19/3
issue [1]  9/9
issues [1]  12/24
it [23]

**J**
JAKE [1]  1/4
Jody [4]  1/14 19/2 19/18 19/20
Jr [1]  2/2
Jules [2]  16/13 16/17
Julia [1]  2/5
July [1]  10/15
July 1st [1]  10/15
June [1]  7/8

**K**
knowledgeable [1]  5/10

**L**
large [1]  13/6
larger [1]  13/18
late [1]  8/1
law [3]  2/2 10/13 15/25
laws [1]  5/10
least [3]  6/1 8/6 9/4
legal [1]  4/16
legislative [2]  12/11 13/1
legislator [2]  11/5 11/20
legislature [1]  5/1
let's [4]  6/16 7/10 7/10 9/14
level [1]  6/15

**LIBERTARIAN [1]**  1/3
LINE [8]  20/9 20/11 20/13 20/15 20/17 20/19 20/21 20/23
Lining [1]  12/13
litigation [1]  9/10
live [2]  4/10 4/11
lobby [1]  16/6
lobbyist [1]  11/22
lobbyists [1]  4/25
long [5]  5/13 10/22 15/23
look [1]  7/25
looking [1]  14/23

**M**
made [1]  10/25
mail [5]  11/5 11/7 11/8 11/13 11/15
major [4]  12/15 13/3 14/19 15/4
make [1]  18/8
Malloy [4]  1/15 19/2 19/18 19/20
many [3]  10/19 12/22 13/8
March [10]  7/4 9/13 9/25 11/1 13/19 13/24 15/4 15/8 15/11 16/3
Marie [1]  4/6
Matt [3]  16/10 17/12 17/25
matters [1]  11/21
matterwise [1]  5/3
Matthew [1]  2/9
mean [2]  12/17 14/2
meet [1]  8/17
mentioned [1]  13/10
met [1]  8/8
mid [2]  9/13 9/25
mid-March [2]  9/13 9/25
minor [2]  13/3 15/9
Moines [1]  2/10
MOLLY [8]  1/13 3/2 4/2 4/8 4/10 16/23 18/7 20/3
Monday [1]  7/8
months [1]  9/4
more [2]  16/16 17/13
Morgantown [1]  2/3
morning [1]  16/22
Mr [2]  3/4 3/5
Ms [1]  3/4
Ms. [2]  17/16 18/4
Ms. Widen [2]  17/16 18/4

**N**
name [2]  4/7 4/8
national [1]  17/3
need [2]  13/19 17/9
never [1]  13/7
new [1]  13/11
next [1]  17/6
no [9]  1/3 6/11 7/11 10/24 12/6 16/5 16/8 17/21 18/15
nobody [1]  7/9
nominate [2]  7/17 8/9
nominated [1]  14/19
nomination [1]  10/2
non [5]  5/20 6/4 9/14 11/18 12/16
non-party [3]  5/20 6/4 9/14
non-political [2]  11/18 12/16
none [2]  3/9 8/6
noted [1]  20/4
nothing [1]  17/25
noticed [1]  8/14
NPPO [1]  9/17
number [2]  6/19 6/21 14/15

numbered [1]  7/8

**O**
object [1]  16/14
obviously [1]  16/25
occur [1]  12/14
Ofenbakh [2]  2/5 3/4
offer [1]  4/23
office [16]  6/15 7/10 7/10 8/3 8/17 8/18 11/3 11/24 12/23 13/22 14/7 15/21 15/24 16/3 17/8 17/20
office's [1]  4/25
officer [1]  5/6
official [2]  12/1 17/2
often [1]  8/2
omnibus [1]  13/15
once [3]  14/3 14/14 15/16
one [9]  4/25 8/22 8/23 14/12 14/24 16/6 16/11 17/10 17/12
one-page [1]  14/24
only [2]  11/12 12/10
opposed [1]  16/4
options [1]  9/17
order [2]  6/20 14/8
ordinarily [1]  16/10
organization [1]  6/1
organization's [1]  9/15
organizations [3]  5/20 6/5 12/16
originate [1]  11/2
others [1]  6/5
otherwise [1]  19/13
our [7]  4/22 4/23 7/25 9/3 12/1 14/7 14/8
out [1]  8/20
outside [1]  14/10
over [3]  14/23 17/2 18/8

**P**
page [11]  3/14 14/24 20/1 20/9 20/11 20/13 20/15 20/17 20/19 20/21 20/23
part [2]  13/14 13/18
participate [3]  8/23 8/24 11/16
particular [2]  7/9 7/17 10/12
parties [10]  5/17 6/6 6/9 11/18 12/15 13/3 15/9 16/24 16/25 17/20
party [11]  1/3 5/18 5/20 5/25 6/4 7/20 9/14 12/16 14/20 15/4 19/13
pass [1]  16/11
PATE [1]  1/7
path [3]  6/8 6/12 9/15
PAUL [1]  1/7
percent [2]  6/1 8/6
percentage [2]  5/19 6/18
perception [1]  13/1
period [7]  9/5 14/3 14/6 14/11 14/12 15/12 15/12
periods [1]  12/22
personally [1]  15/15
petition [2]  15/11 15/12
petitions [5]  9/24 14/16 14/25 16/23 17/9
piece [2]  13/9 13/21
place [1]  19/8
placed [1]  19/16
Plaintiff [1]  1/14
Plaintiffs [2]  1/5 2/7
play [1]  17/17
please [1]  4/7

**PLLC [1]**  2/6
PO [1]  2/3
point [1]  16/13
political [13]  5/17 5/20 5/25 6/4 6/6 6/9 9/14 11/18 12/15 12/16 13/3 15/9 16/25
PORTER [1]  1/4
position [5]  5/9 5/14 11/24 12/5 16/3
president [1]  6/2
presidential [4]  16/23 17/1 17/4 17/17
pretty [1]  8/12
previous [1]  10/16
primary [8]  5/2 6/24 7/5 7/12 8/5 8/23 10/7 15/4
privately [1]  16/13
problem [1]  18/15
problems [1]  12/19
proceed [1]  9/22
process [5]  9/19 9/23 10/2 14/18 15/16
processes [1]  14/16
processing [3]  14/15 14/22 15/13
promotes [1]  13/24
provided [1]  18/7
purpose [1]  12/7

**Q**
query [1]  17/13
question [2]  16/23 17/22
questions [4]  16/10 16/14 16/18 18/2

**R**
rather [2]  8/15 15/11
read [4]  18/4 18/12 19/10 20/4
really [3]  13/6 13/7 16/12
reason [1]  13/23
receive [2]  8/5
receives [1]  6/1
record [1]  19/6
regarding [1]  13/3
regards [1]  12/12
registration [1]  12/2
related [1]  13/16
relating [1]  5/11
relative [1]  19/13
relevant [1]  16/13
report [1]  12/24
reported [1]  1/14
reporter [3]  3/13 18/9 19/3
Republican [3]  6/13 7/11 8/7
Republicans [3]  6/10 6/22 7/12
requested [1]  19/10
requirement [1]  17/6
responsibilities [1]  4/19
retaining [1]  16/3
revenues [1]  17/18
reviewing [1]  8/14
rights [1]  18/4
RMR [2]  1/15 19/20
Robert [1]  2/2
role [1]  15/22
routinely [1]  8/13
run [2]  7/11 17/19

**S**
same [4]  10/3 12/14 14/15 15/9
school [1]  16/1
Secretary [13]  1/7 4/17 5/5 7/11 8/8 8/18 11/3 11/23 12/4 12/23

## S

Secretary... [3]  13/22 16/2
  17/20
section [3]  9/9 9/10 10/5
Section 44.4 [1]  10/5
Senate [2]  6/17 7/6
Senator [1]  6/16
sense [1]  11/19
separate [1]  8/21
serve [2]  4/16 4/24
set [2]  10/4 19/5
setting [1]  15/7
seven [1]  8/7
short [1]  18/14
Shorthand [1]  19/2
sign [3]  18/5 18/12 19/11
signature [3]  9/23 17/5 20/1
signatures [7]  6/18 6/21 7/2
  9/18 15/2 15/13 17/1
six [2]  8/7 9/4
slot [1]  7/13
sometime [4]  7/3 8/1 9/25
  10/20
sorry [2]  4/12 15/23
sort [2]  8/19 13/15
Sos.Iowa.gov [1]  9/7
sounds [1]  10/11
SOUTHERN [1]  1/1
speaking [1]  12/10
specifically [2]  7/24 13/9
specified [1]  19/9
specifies [1]  9/12
staff [3]  12/11 14/8 14/10
started [2]  5/15 15/25
starting [1]  1/15
state [10]  1/7 1/7 4/7 4/17 5/5
  7/11 11/12 17/21 19/3 20/3
State's [7]  8/18 11/3 11/23
  12/23 13/22 16/2 17/20
STATES [1]  1/1
statewide [5]  5/19 7/10 7/16
  7/18 8/3
still [4]  14/15 14/18 15/25 17/8
stream [1]  11/15
Street [2]  2/6 2/10
stuck [1]  13/17
subject [1]  5/3
submit [3]  7/1 9/18 17/1
suit [1]  19/14
Suite [1]  2/6
sure [5]  13/5 13/11 18/6 18/13
  18/14
sworn [2]  4/3 19/4

## T

taken [2]  1/13 19/8
takes [1]  14/7
talk [1]  16/12
talking [2]  14/23 14/25
technicians [1]  4/24
technology [1]  11/14
tell [1]  7/24
terms [1]  15/16
testified [1]  4/4
testimony [3]  18/19 19/6 19/15
Thank [1]  17/11
that [45]
though [1]  14/22
thousands [1]  15/1
Three [2]  15/18 15/19
threshold [2]  8/4 8/9
through [3]  9/19 12/22 15/15

time [9]  10/3 10/4 12/14 14/7
  14/9 14/9 14/22 15/9 19/8
times [2]  15/18 15/19
took [1]  15/22
tracking [1]  11/13
transcript [2]  18/8 19/5
true [1]  19/5
trying [1]  12/8
Tuesday [1]  7/7
turn [1]  17/2
turns [1]  17/10
twice [3]  14/4 14/13 14/14
two [3]  5/24 8/21 9/20
typically [1]  9/4

## U

U.S [2]  6/16 6/17
U.S. [1]  7/6
U.S. Senate [1]  7/6
undecided [1]  12/3
Under [1]  16/15
understand [1]  5/16
understanding [1]  12/10
uniformity [4]  12/11 12/12 13/2
  13/20
UNITED [1]  1/1
up [1]  12/13
us [2]  14/2 14/11
utilizes [1]  11/13

## V

value [1]  13/1
various [1]  13/16
versus [1]  14/12
via [1]  17/5
vote [4]  5/19 6/2 8/6 11/19

## W

W.VA [1]  2/3
Walnut [1]  2/10
want [2]  18/3 18/11
way [3]  11/11 12/5 16/6
ways [1]  9/20
we're [2]  14/23 14/25
website [2]  9/3 9/6
week [1]  14/12
what's [1]  9/6
whatever [1]  14/19
whether [1]  14/14
which [4]  5/18 9/9 9/12 10/7
whole [2]  12/2 14/3
wholly [1]  17/19
WIDEN [7]  1/13 3/2 4/2 4/9
  17/16 18/4 20/3
within [1]  19/7
witness [3]  3/14 19/10 20/6
words [2]  12/9 17/8
work [1]  4/22
worked [1]  15/21

## Y

Yeah [1]  18/14
years [2]  7/8 8/13
Yep [3]  10/9 15/6 15/10

## Z

ZOOM [1]  1/13

```
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF IOWA
 2                     CENTRAL DIVISION

 3   - - - - - - - - - - - - - - - X
     IOWA LIBERTARIAN PARTY and     )
 4   JAKE PORTER,                    )            COPY
                                     )
 5            Plaintiffs,            )  CASE NO.
                                     )  4:19-CV-00241-SMR-HCA
 6   vs.                             )
                                     )
 7   PAUL D. PATE, Secretary of      )
     State and State Commissioner    )
 8   of Elections,                   )
                                     )
 9            Defendant.             )
     - - - - - - - - - - - - - - - X
10

11            DEPOSITION OF RICHARD WINGER,

12   taken via Zoom Video Conference by the Plaintiffs
     before Keriann E. Hansen (Appearing via Zoom),
13   Certified Shorthand Reporter of the State of Iowa,
     commencing at 1:05 p.m., Tuesday, August 18, 2020.
14

15

16

17

18

19

20

21

22

23

24

25   KERIANN E. HANSEN - CERTIFIED SHORTHAND REPORTER
```

IOWA LIBERTARIAN PARTY, et al., vs PAUL D. PATE
RICHARD WINGER  08/18/2020

Pages 2..5

**Page 2**

```
 1   APPEARANCES:
 2   For the Plaintiffs:   ROBERT BASTRESS, JR., ESQ.
                           (Appearing via Zoom)
 3                         Robert M. Bastress, Jr.
                           P.O. Box 1295
 4                         Morgantown, WV 26507
 5                         JULIA A. OFENBAKH, ESQ.
                           (Appearing via Zoom)
 6                         Iowa Defenders, PLLC
                           2183 86th Street, Suite C
 7                         Clive, Iowa 50325
 8   For the Defendant:    MATTHEW L. GANNON, ESQ.
                           (Appearing via Zoom)
 9                         Iowa Attorney General's Office
                           Hoover State Office Building
10                         1305 East Walnut Street
                           Des Moines, IA 50319
11
     Witness:              Richard Winger
12                         (Appearing via Zoom)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1                  I N D E X
 2   WITNESS:  RICHARD WINGER            PAGE
 3   Examination By Mr. Bastress:           4
 4   Examination By Mr. Gannon:            19
 5
 6   EXHIBITS:                           PAGE
 7   1  - Curriculum Vitae                  5
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
 1             P R O C E E D I N G S
 2                  RICHARD WINGER,
 3   called as a witness by the Plaintiffs, being first
 4   duly sworn by the Certified Shorthand Reporter, was
 5   examined and testified as follows:
 6                  EXAMINATION
 7   BY MR. BASTRESS:
 8        Q    Would you state your name for the record,
 9   please?
10        A    Richard Winger.
11        Q    And what's your current employment or
12   position?
13        A    I publish a monthly print election law
14   newsletter called Ballot Access News.
15        Q    And I think you also maintain a web site
16   for that, don't you?
17        A    Yes.
18        Q    What all does that entail?
19        A    The most important function is to help
20   the readers keep track of changes and laws that
21   affect independent candidates and minor parties and
22   also laws that affect all parties.  And it also
23   covers election returns and voter registration data
24   and book reviews.
25        Q    And do you do that for each of the 50
```

**Page 5**

```
 1   states in the federal government?
 2        A    Yes.
 3        Q    Do you also track litigation with regards
 4   to independent and minor party political access?
 5        A    Yes.
 6        Q    So you are familiar with --
 7        A    I'm going to shut the door.
 8        Q    Are you familiar with the statutory laws
 9   as well as the case law, then, in each of the
10   jurisdictions of the United States?
11        A    Yes.
12        Q    And how long have you been doing that?
13        A    Well, I've been studying the laws since I
14   was in college in the mid '60s, but the newsletter
15   started in 1985.
16        Q    Okay.  So between your college graduation
17   and when the newsletter started, you were doing
18   much the same thing you're doing now except you
19   didn't have the newsletter?
20        A    That's right.
21        Q    Is that right?  Okay.
22             And you have provided me with a resume, a
23   curriculae vitae as it's captioned by you, and I
24   have made that available to Mr. Gannon, counsel for
25   Secretary Pate.
```

Page 6

```
1            MR. BASTRESS:  And did you get a copy of
2   this, Keriann?
3            THE REPORTER:  Yes.
4            MR. BASTRESS:  Okay.
5   BY MR. BASTRESS:
6       Q   Is that an accurate and relatively
7   current reflection of your work?
8       A   It's accurate, although it's a little
9   tiny bit out of date.
10      Q   Okay.  Anything major that's occurred
11  since you created that document?
12      A   No.
13      Q   Now, I had it in front of me.  Hang on a
14  second.  The resume reflects that you have
15  contributed chapters to several books, as well as
16  written articles in quite a few different -- both
17  legal academic journals as well as the General
18  Press.
19          Have all or almost all of those concerned
20  minor parties or independent candidates and the
21  electoral process?
22      A   Yes.
23      Q   And you also list a rather considerable
24  number of cases in which you have testified
25  relating -- and those all relate to political
```

Page 7

```
1   access for minor parties and independents; is that
2   correct?
3       A   Yes.  There's a handful that relate to
4   the ability of people to register as members of
5   unqualified parties.
6       Q   Okay.  And you've been qualified as an
7   expert in the area of minor political parties and
8   independents and the electoral process in a number
9   of different jurisdictions; is that correct?
10      A   Yes.
11      Q   Your resume lists 14 different cases in
12  which that has occurred.  Does that sound right?
13      A   Yes.
14      Q   Including as an expert in California
15  Democratic Party versus Jones, which was a U.S.
16  Supreme Court case, and that concerned California's
17  use of the blanket primary ballot; is that correct?
18      A   Yes.
19      Q   What was the nature of your testimony in
20  that case?
21      A   I was trying to show how minor parties
22  were injured by the blanket primary process.
23      Q   Okay.
24          MR. BASTRESS:  Mr. Gannon, I'm going to
25  seek to have Mr. Winger classified -- or identified
```

Page 8

```
1   as an expert witness in this case on minor parties
2   and the electoral process.  Would you stipulate to
3   that?  And if not, do you want to voir dire
4   Mr. Winger on his credentials now or wait?
5            MR. GANNON:  I'm not going to voir dire
6   Mr. Winger on his credentials today.  I'm going
7   to -- we'll reserve our right on that.  But for
8   purposes of this deposition, we can go ahead and
9   take his testimony as if he were an expert.
10           MR. BASTRESS:  Okay.
11  BY MR. BASTRESS:
12      Q   Are you familiar with Iowa's procedures
13  for minor political parties to qualify for the
14  general election ballot?
15      A   Yes.
16      Q   And under Iowa -- let's get the
17  nomenclature down.  Minor parties are sometimes
18  referred to as third parties, even though you could
19  have five, quote, third parties in a particular
20  election?
21      A   Yes.  I tend to avoid the term third
22  parties.  And when I say minor parties, I mean it
23  in a political science sense, not a legal category.
24      Q   Right.  And so we distinguish -- most
25  states' statutes distinguish between the major
```

Page 9

```
1   parties, which almost everywhere are the Democrats
2   and the Republicans, and the smaller parties; is
3   that correct?
4       A   Yes.  But there's really no simple
5   template.  Seventeen states have two categories of
6   qualified parties.  Large parties which nominate by
7   primary and small qualified party which are on the
8   ballot.  They don't need to petition for their
9   nominees, but they don't have primaries.  They
10  nominate by convention.  And I think that's the
11  ideal.
12      Q   Yeah.
13      A   Iowa is not one of those states.
14      Q   And in Iowa the nomenclature they use for
15  the minor parties is non-party political
16  organizations, I think is what they call them.  Are
17  you familiar with that?
18      A   That sounds familiar.
19      Q   Yeah.  What's your understanding of how
20  the minor parties can qualify their candidates for
21  the general election ballot?
22      A   Well, unless they're a qualified party,
23  which is a group that pulled at least 2 percent of
24  the vote for the office at the top of the ballot in
25  the preceding general election, they have to
```

Page 10

1  petition for their nominees.  And then there is an
2  alternate procedures, which is very seldom used.
3  So it's kind of a one-day, one-place, 250-signature
4  petition, which they call a meeting.
5        But they're very liberal about how they
6  interpret it because in 2012 the Libertarian Party
7  of Iowa had to use it.  I forget why but there was
8  a problem with their petition to get on for
9  president.  So I thought the Secretary of State was
10  very kind in 2012, and he interpreted that
11  250-person meeting very liberally.  It was kind of
12  a one-day, one-spot petition drive, but that's very
13  seldom used.
14        Q    Are you familiar with the filing deadline
15  for the minor party political candidates?
16        A    Yes.  For president it was just a few
17  days ago.  This year was August 14th, but for all
18  other office this year for the first time, it was
19  in the middle of March.
20        Q    Oh.  That was -- the recent deadline was
21  for just presidential candidates?
22        A    Yes.
23        Q    Okay.  But all other candidates, it's --
24  the filing deadline is when?
25        A    Oh, there's a formula for it.  It ends up

Page 11

1  in the middle of March.
2        Q    Okay.  I think this year was March 14th.
3  Do you know?
4        A    I don't know that, but I -- I doubt
5  that -- I'm sure you do.
6        Q    That's what the complaint allegations
7  anyhow.
8        A    Okay.
9        Q    Does the March deadline create any
10  difficulties for minor political parties?
11        A    Yes.  It doesn't give them nearly as much
12  time to recruit candidates, and I just observed
13  today actually that there's -- according to the
14  Iowa Secretary of State web page, which is quite a
15  good web page, the candidate list is up, and
16  there's only one minor party or independent
17  candidate for U.S. House.  And that is the smallest
18  number of minor party and independent candidates
19  for U.S. House in Iowa since 1990.  It's also low
20  relatively speaking for legislature.
21        Q    And what were the filing deadlines in
22  Iowa prior to this year?  This year being the first
23  year the March deadline applied.
24        A    They had the same deadline as the
25  presidential independents, middle of August.

Page 12

1        Q    And apparently at least congressional
2  candidates, there -- do you recall how common they
3  were in Iowa prior to this year?
4        A    For U.S. House in 2018 -- I'll lump the
5  minor parties and independent candidates together.
6  There were nine in 2018 and three in 2016.  Okay.
7  I didn't write down the number for all the years,
8  but I did observe that 2020 is the lowest number
9  since 1990.  There's only one.
10        Q    Is a March deadline -- you mentioned it
11  makes it more difficult for minor parties to
12  recruit candidates.  Why is that?
13        A    Successful minor parties usually have
14  candidate recruiters, and it's their job to talk to
15  members and activists and try to persuade them to
16  run.  And the Libertarian party has always trying
17  diligently to increase the number of candidates for
18  congress and it's hard work.
19        I remember I helped the man in charge one
20  year.  That was 20 years ago, and I would talk to
21  people, and I would be completely unwilling to
22  persuade them.  But he was better at it than I was.
23  The Libertarian party, I think, in 2000 became the
24  first third party since 1916 to run candidates for
25  the U.S. House in a majority of U.S. House

Page 13

1  districts in the whole country.
2        And that was a point of pride for the
3  Libertarian party.  It held the campaign.  There
4  could be a unified campaign for Libertarian
5  candidates for congress, and they could say vote
6  for us, elect us.  In theory, the voters could
7  elect a Libertarian majority to the House, and then
8  we will implement these things.  So you couldn't
9  say that honestly unless you had candidates on the
10  ballot in a majority of districts and that was a
11  lot of work.  So the party only achieved that a few
12  times.  It hasn't done that recently.
13        Q    And minor political parties in particular
14  depend heavily on volunteers?
15        A    Yes.
16        Q    Is it more difficult to recruit
17  volunteers for a March deadline than, say, an
18  August?
19        A    Well, I'm not sure I'm understanding your
20  question.  Could you say it again?
21        Q    Is it more difficult to recruit
22  volunteers in March than, say, later in the
23  election year?
24        A    Yes.
25        Q    Why is that?

Page 14

1    A    Well, it doesn't really relate to whether
2  somebody is a volunteer or a professional.  I mean,
3  the Libertarian candidate recruiter was a paid
4  employee of the national party, but I don't think
5  whether somebody is a volunteer or is paid to
6  recruit candidates really affects the difficulty of
7  the job.
8    Q    Is it fair to say that interest in
9  election issues increase as the election year
10 progresses?
11   A    Yes.
12   Q    And the issues can change fairly
13 dramatically after mid March, can they not?
14   A    Yes.  In fact, the U.S. Supreme Court
15 decision Anderson versus Celebrezze quotes a
16 historian, Alexander Bickel about that and one of
17 the quotes was about the 1968 election when who
18 could've imagined that Robert Kennedy would be shot
19 and killed in June of the election year.
20        And it also mentions the various shocking
21 announcement by Lyndon Johnson on March 31, 1968
22 that he wasn't going to run for re-election.  It
23 was shocking because everybody assumed he was, so
24 those are examples.
25   Q    Uh-huh.  And this year would be an

Page 15

1  example because in mid March, COVID was barely an
2  issue.  It certainly is now.  Fair to say?
3    A    You're right.  That could not have been
4  predicted.  That's true.
5    Q    The recent deposition that I took of
6  Molly Widen, who is the counsel to the -- legal
7  counsel to the Secretary of State on auction
8  matters, and I asked her what the rationale was for
9  the 2019 change in the law, which moved the
10 deadline for all non-presidential minor party
11 candidates from August to mid March.  And her
12 testimony was that the rationale was apparently to
13 create the same time for qualifying non-party --
14 for non-party political organizations -- candidates
15 to file as for the major party candidates.
16        In your opinion, does that rationale
17 promote any particular state interest in electoral
18 efficiency or integrity?
19   A    Well, I think everybody recognized that
20 in the United States there are two very strong
21 political parties that run the country, and then
22 there's all the other political parties which have
23 very little influence.  The parties in the
24 United States are not similarly situated.  Even the
25 most hostile U.S. Supreme Court decision ever for

Page 16

1  minor parties and independent candidates, which is
2  called Jenness versus Fortson from Georgia in 1971,
3  said sometimes the grosses discrimination results
4  from treating different things as though they were
5  alike.  And, of course, Anderson versus Celebrezze
6  also says a lot about that.
7    Q    Right.  So do you see any particular
8  state interest that we -- that would be advanced by
9  this same deadline from minor party candidates as
10 for major party candidates to file?
11   A    There is a certain esthetic appeal to the
12 idea that everybody should qualify at the same
13 time.  For instance, in Great Britain and Canada,
14 every candidate qualifies on the same date.  But
15 the big difference is in Britain and Canada, the
16 filing deadlines for everybody are just a few weeks
17 before the election.
18        I was doing a little research, and I
19 noticed that way back in 1968 and 1972, Iowa had
20 its primary in September, so I believe Republicans
21 and Democrats filed for the primary in July in
22 those years.  And if Iowa had a September deadline,
23 then I don't think the notion of equal filing
24 deadlines would be that objectionable.  And there
25 are still states that have September primaries this

Page 17

1  year.  In fact, Delaware is the September 15th
2  primary this year.  How they do it, I don't know.
3        So if everybody's deadline were later,
4  then the principle of equality would be a little
5  less objectionable, but March is a long way from
6  November.
7    Q    Yeah.  And Ms. Widen also stated that
8  having candidates all file for -- to run at the
9  same time would allow the Secretary of State to
10 have one season for qualifying the candidates.  Is
11 there any particular value in that?
12   A    Well, of course in presidential years,
13 that wouldn't be the case anyway, because there
14 would still be a separate later period for
15 presidential candidates.  So it's a dream that
16 can't be realized in presidential years.
17   Q    Right.  Still have to qualify every
18 candidate regardless of when you do it; right?  I
19 mean, the Secretary of State would have to do that?
20   A    Well, of course, the major parties don't
21 hold their presidential conventions until August,
22 so they're not going to be finalizing the list of
23 candidates before then.
24   Q    Yeah.  Let's talk about the supposed
25 equal treatment too.  Iowa has now made the

Page 18

1  candidate file on deadlines for major and minor
2  party non-presidential candidates the same time,
3  but the parties -- major parties don't have to
4  identify their candidates until when?  Do you know?
5      A    Well, if nobody files for the primary and
6  the primary is in June, then a qualified party can
7  pick somebody with a party meeting as late as July.
8  So the supposed equality of treatment falls apart
9  because there's no provision in the current law for
10 independents to get into the race as late as July
11 except the president, of course.
12     Q    Yeah.  So the parties can -- the parties
13 normally identify their candidates in the primary,
14 and then they have until July, you stated, to fill
15 in any empty slots?
16     A    Right.
17          MR. BASTRESS:  I think that's all the
18 questions I have.  Matt, would you object to Jules
19 asking any questions, if she has some?
20          MR. GANNON:  No.
21          MR. BASTRESS:  Jules, do you.
22          MS. OFENBAKH:  I don't have any
23 questions.  Thank you.
24          MR. BASTRESS:  Okay.  Then, Matt, the
25 witness is yours.

Page 19

1          MR. GANNON:  All right.  Thank you very
2  much.  And Mr. Winger and counsel as well, I want
3  to thank you all for accommodating my schedule last
4  week when the lights went out and reconvening here
5  today, so I do appreciate that from everyone.
6          Mr. Winger --
7          MR. BASTRESS:  We read an article about
8  your storms, Matt.  It sounded pretty nasty.
9          MR. GANNON:  Yeah, it was not a good
10 situation and still not a good situation in some
11 parts of the state.
12               EXAMINATION
13 BY MR. GANNON:
14     Q    But Mr. Winger, it's a pleasure to make
15 your acquaintance over the phone and the computer
16 here this afternoon.  Thank you.  I have just a few
17 questions for you, if you don't mind.
18          First, you filed an expert report in this
19 case; correct?
20     A    I filed a what?
21     Q    An expert report.
22     A    Oh, yes, yes.  It's -- I have it here.
23     Q    Okay.
24     A    It's pretty small.  It's only -- how long
25 is it?  It's only three pages.

Page 20

1      Q    Yes.  Okay.  So if you need to -- on any
2  question I have, if you want to refer to that,
3  please feel free to do so.  I don't know that I
4  have a specific question on a specific page, but
5  please feel free to refer to it if you need to.
6          Your testimony in your expert report are
7  on behalf of the Iowa Libertarian Party; correct?
8      A    Yes.
9      Q    Okay.  And at the top of Mr. Bastress's
10 questions, you discussed some of the particular
11 terms in Iowa law, and I just want to make sure
12 that we're all still straight on those.  You talked
13 about major and minor parties.  In Iowa we have
14 what are known as political parties and non-party
15 political organizations; correct?  Is that your
16 understanding?
17     A    Yes.
18     Q    And do you know what it -- how one party
19 qualifies as a political party under Iowa law?
20     A    Yes.  In Iowa, which is unlike most
21 states, a group cannot become a qualified party
22 until it pulls 2 percent of the vote for either
23 president in the presidential year or governor in
24 the a gubernatorial year.
25          Now, 39 states have something that Iowa

Page 21

1  doesn't.  Thirty-nine states have a procedure, a
2  task, that an unqualified party can do to turn
3  itself into a qualified party before waiting for
4  the election.  And that's probably not what you
5  wanted to talk about, but I did want to mention
6  that.  Iowa is a minority.
7      Q    But it's your understanding that the Iowa
8  Libertarian Party is not challenging that 2 percent
9  in an election threshold here in this lawsuit;
10 correct?
11     A    I agree with that.
12     Q    Okay.  And the Iowa Libertarian Party is
13 currently classified as a non-party political
14 organization under Iowa law; correct?
15     A    Yes.
16     Q    Has the Iowa Libertarian Party ever
17 qualified as a political party under Iowa law to
18 your knowledge?
19     A    It did so for the first time in
20 November 2016 by pulling over 2 percent for
21 president, and it really wanted to keep that status
22 and it tried very hard to get 2 percent for
23 governor in 2018 and came pretty close but didn't
24 make it.  So it lost its status.
25     Q    Do you know what the first year the Iowa

Page 22

1   Libertarian Party had a candidate either for
2   governor or for president on the ballot in Iowa?
3       A   Yes.  1976 for Roger MacBride for
4   president.
5       Q   So you would agree with me that the Iowa
6   Libertarian Party is not a new political party?
7       A   Yes.
8       Q   Do you know, Mr. Winger, are individual
9   Iowans who wish to register as a member of the
10  Libertarian party permitted to do so on an Iowa
11  voter registration form?
12      A   Yes.  And I'm very, very happy about
13  that.  And it took a lawsuit to achieve that, but
14  the State very graciously didn't fight the lawsuit.
15  It was an ACLU lawsuit some years ago.
16      Q   And that is the case regardless of the
17  status of the Libertarian party as either a
18  political party or a non-party political
19  organization; correct?
20      A   Yes.  Although I must say when the Iowa
21  Secretary of State web page shows voter
22  registration data, even though they know how many
23  registered Libertarians and registered greens there
24  are, they won't put it on their web page, which
25  I've asked them several times to consider listing

Page 23

1   all the groups that have the right to have
2   registered members because it would be useful
3   information, but they have not paid any attention
4   to my request.
5       Q   Mr. Winger, Mr. Bastress asked you a
6   couple questions about the timing of a February or
7   March filing -- March filing period as opposed to
8   an August filing period and the ease or difficulty
9   in recruiting volunteers or paid staff.
10          Would you -- what is your view on a
11  candidate required to collect signatures in
12  March -- well, let me strike that.
13          What is your understanding of who may
14  sign a petition to nominate a candidate for the
15  ballot in Iowa -- for a non-political party
16  organization candidate for the ballot in Iowa?
17      A   Any registered voter.
18      Q   And if it's a legislative candidate, does
19  that registered voter have to be a resident of the
20  legislative district?
21      A   Oh, yes.  If it's for a district office
22  or county office, the signer has to be a future
23  constituent.
24      Q   And so if a candidate is circulating
25  petitions, presumably they are making contact with

Page 24

1   potential voters; correct?
2       A   Yes.
3       Q   And voter contact is important at any
4   point in the electoral process; correct?
5       A   Yes.
6           MR. GANNON:  All right.  Mr. Bastress, I
7   have no further questions.
8           MR. BASTRESS:  Okay.  Richard, you have a
9   choice about whether to read and sign the
10  deposition, meaning the transcript will be provided
11  to you when it's completed, and then you can read
12  it for -- to ensure it's an accurate recording of
13  what your testimony was.  You can't change your
14  testimony, but you can correct any mistakes that
15  you identify.  Or you can waive that right to read.
16          What would you prefer?
17          THE WITNESS:  Well, this was one of the
18  shorter depositions, assuming it's almost over, so
19  I guess I'm not worried about any errors in it.
20  I'll waive that.
21          MR. BASTRESS:  Okay.  And Keriann, I
22  would ask you attach Mr. Winger's CV as Exhibit 1
23  for the deposition.
24              (Exhibit 1 was marked for
25                 identification.)

Page 25

1           (Deposition concluded at 1:40 p.m.)

```
                                          Page 26
 1          C E R T I F I C A T E
 2          I, the undersigned, a Certified Shorthand
 3   Reporter of the State of Iowa, do hereby certify
 4   that there came before me via Zoom Video Conference
 5   at the time and date hereinbefore indicated, the
 6   witness named on the caption sheet hereof, who was
 7   by me duly sworn to testify to the truth of said
 8   witness' knowledge, that the witness was thereupon
 9   examined under oath, the examination taken down by
10   me in shorthand and later reduced to a transcript
11   through the use of a computer-aided transcript
12   device under my supervision and direction, and that
13   the deposition is a true record of the testimony
14   given and of all objections interposed.
15          I further certify that I am neither
16   attorney or counsel for, nor related to or employed
17   by any of the parties to the action in which this
18   deposition is taken, and further that I am not
19   a relative or employee of any attorney or counsel
20   employed by the parties hereto, or financially
21   interested in the action.
22          Dated at Des Moines, Iowa, this 26th day of
23   August, 2020.
24
25          CERTIFIED SHORTHAND REPORTER
```

Index: 1..curriculae

| Exhibits | 6 | appeal 16:11 | Britain 16:13,15 | college 5:14,16 |
|---|---|---|---|---|
| | | applied 11:23 | | common 12:2 |
| 111265_ | 60s 5:14 | appreciate 19:5 | C | complaint 11:6 |
| Winger Exhibit 1 | | area 7:7 | | completed 24:11 |
| 3:7 24:22,24 | A | article 19:7 | California 7:14 | completely 12:21 |
| 1 24:22,24 | | articles 6:16 | California's 7:16 | computer 19:15 |
| 14 7:11 | ability 7:4 | ask 24:22 | call 9:16 10:4 | concerned 6:19 |
| 14th 10:17 11:2 | academic 6:17 | asked 15:8 22:25 | called 4:3,14 16:2 | 7:16 |
| 15th 17:1 | access 4:14 5:4 7:1 | 23:5 | campaign 13:3,4 | concluded 25:1 |
| 1916 12:24 | accommodating | asking 18:19 | Canada 16:13,15 | congress 12:18 |
| 1968 14:17,21 16:19 | 19:3 | assumed 14:23 | candidate 11:15,17 | 13:5 |
| 1971 16:2 | according 11:13 | assuming 24:18 | 12:14 14:3 16:14 | congressional |
| 1972 16:19 | accurate 6:6,8 | attach 24:22 | 17:18 18:1 22:1 | 12:1 |
| 1976 22:3 | 24:12 | attention 23:3 | 23:11,14,16,18,24 | considerable 6:23 |
| 1985 5:15 | achieve 22:13 | auction 15:7 | candidates 4:21 | constituent 23:23 |
| 1990 11:19 12:9 | achieved 13:11 | August 10:17 11:25 | 6:20 9:20 10:15,21, | contact 23:25 24:3 |
| 1:40 25:1 | ACLU 22:15 | 13:18 15:11 17:21 | 23 11:12,18 12:2,5, | contributed 6:15 |
| | acquaintance | 23:8 | 12,17,24 13:5,9 14:6 | convention 9:10 |
| 2 | 19:15 | available 5:24 | 15:11,14,15 16:1,9, | conventions 17:21 |
| | activists 12:15 | avoid 8:21 | 10 17:8,10,15,23 | copy 6:1 |
| 2 9:23 20:22 21:8,20, | actually 11:13 | | 18:2,4,13 | correct 7:2,9,17 9:3 |
| 22 | advanced 16:8 | B | captioned 5:23 | 19:19 20:7,15 21:10, |
| 20 12:20 | affect 4:21,22 | | case 5:9 7:16,20 8:1 | 14 22:19 24:1,4,14 |
| 2000 12:23 | affects 14:6 | back 16:19 | 17:13 19:19 22:16 | could've 14:18 |
| 2012 10:6,10 | afternoon 19:16 | ballot 4:14 7:17 8:14 | cases 6:24 7:11 | counsel 5:24 15:6,7 |
| 2016 12:6 21:20 | agree 21:11 22:5 | 9:8,21,24 13:10 22:2 | categories 9:5 | 19:2 |
| 2018 12:4,6 21:23 | ahead 8:8 | 23:15,16 | category 8:23 | country 13:1 15:21 |
| 2019 15:9 | Alexander 14:16 | barely 15:1 | Celebrezze 14:15 | county 23:22 |
| 2020 12:8 | alike 16:5 | Bastress 4:7 6:1,4, | 16:5 | couple 23:6 |
| 250-person 10:11 | allegations 11:6 | 5 7:24 8:10,11 | certain 16:11 | Court 7:16 14:14 |
| 250-signature 10:3 | allow 17:9 | 18:17,21,24 19:7 | Certified 4:4 | 15:25 |
| | alternate 10:2 | 23:5 24:6,8,21 | challenging 21:8 | covers 4:23 |
| 3 | always 12:16 | Bastress's 20:9 | change 14:12 15:9 | COVID 15:1 |
| | Anderson 14:15 | behalf 20:7 | 24:13 | create 11:9 15:13 |
| 31 14:21 | 16:5 | Bickel 14:16 | chapters 6:15 | created 6:11 |
| 39 20:25 | announcement | big 16:15 | charge 12:19 | credentials 8:4,6 |
| | 14:21 | bit 6:9 | choice 24:9 | current 4:11 6:7 |
| 5 | apparently 12:1 | blanket 7:17,22 | circulating 23:24 | 18:9 |
| | 15:12 | book 4:24 | classified 7:25 | curriculae 5:23 |
| 50 4:25 | | books 6:15 | 21:13 | |
| | | | close 21:23 | |
| | | | collect 23:11 | |

IOWA LIBERTARIAN PARTY, et al., vs PAUL D. PATE
RICHARD WINGER  08/18/2020

Index: CV..July

**CV** 24:22

**D**

**data** 4:23 22:22
**date** 6:9 16:14
**days** 10:17
**deadline** 10:14,20, 24 11:9,23,24 12:10 13:17 15:10 16:9,22 17:3
**deadlines** 11:21 16:16,24 18:1
**decision** 14:15 15:25
**Delaware** 17:1
**Democratic** 7:15
**Democrats** 9:1 16:21
**depend** 13:14
**deposition** 8:8 15:5 24:10,23 25:1
**depositions** 24:18
**difference** 16:15
**difficult** 12:11 13:16,21
**difficulties** 11:10
**difficulty** 14:6 23:8
**diligently** 12:17
**dire** 8:3,5
**discrimination** 16:3
**discussed** 20:10
**distinguish** 8:24,25
**district** 23:20,21
**districts** 13:1,10
**document** 6:11
**door** 5:7
**doubt** 11:4
**dramatically** 14:13
**dream** 17:15

**drive** 10:12
**duly** 4:4

**E**

**ease** 23:8
**efficiency** 15:18
**elect** 13:6,7
**election** 4:13,23 8:14,20 9:21,25 13:23 14:9,17,19 16:17 21:4,9
**electoral** 6:21 7:8 8:2 15:17 24:4
**employee** 14:4
**employment** 4:11
**empty** 18:15
**ends** 10:25
**ensure** 24:12
**entail** 4:18
**equal** 16:23 17:25
**equality** 17:4 18:8
**errors** 24:19
**esthetic** 16:11
**everybody's** 17:3
**EXAMINATION** 4:6 19:12
**examined** 4:5
**example** 15:1
**examples** 14:24
**except** 5:18 18:11
**exhibit** 24:22,24
**expert** 7:7,14 8:1,9 19:18,21 20:6

**F**

**fact** 14:14 17:1
**fair** 14:8 15:2
**fairly** 14:12

**falls** 18:8
**familiar** 5:6,8 8:12 9:17,18 10:14
**February** 23:6
**federal** 5:1
**feel** 20:3,5
**fight** 22:14
**file** 15:15 16:10 17:8 18:1
**filed** 16:21 19:18,20
**files** 18:5
**filing** 10:14,24 11:21 16:16,23 23:7,8
**fill** 18:14
**finalizing** 17:22
**first** 4:3 10:18 11:22 12:24 19:18 21:19, 25
**five** 8:19
**follows** 4:5
**forget** 10:7
**form** 22:11
**formula** 10:25
**Fortson** 16:2
**free** 20:3,5
**front** 6:13
**function** 4:19
**future** 23:22

**G**

**Gannon** 5:24 7:24 8:5 18:20 19:1,9,13 24:6
**general** 6:17 8:14 9:21,25
**Georgia** 16:2
**give** 11:11
**good** 11:15 19:9,10
**government** 5:1

**governor** 20:23 21:23 22:2
**graciously** 22:14
**graduation** 5:16
**Great** 16:13
**greens** 22:23
**grosses** 16:3
**group** 9:23 20:21
**groups** 23:1
**gubernatorial** 20:24
**guess** 24:19

**H**

**handful** 7:3
**Hang** 6:13
**happy** 22:12
**hard** 12:18 21:22
**heavily** 13:14
**held** 13:3
**help** 4:19
**helped** 12:19
**historian** 14:16
**hold** 17:21
**honestly** 13:9
**hostile** 15:25
**House** 11:17,19 12:4,25 13:7

**I**

**idea** 16:12
**ideal** 9:11
**identification** 24:25
**identified** 7:25
**identify** 18:4,13 24:15
**imagined** 14:18

**implement** 13:8
**important** 4:19 24:3
**including** 7:14
**increase** 12:17 14:9
**independent** 4:21 5:4 6:20 11:16,18 12:5 16:1
**independents** 7:1, 8 11:25 18:10
**individual** 22:8
**influence** 15:23
**information** 23:3
**injured** 7:22
**instance** 16:13
**integrity** 15:18
**interest** 14:8 15:17 16:8
**interpret** 10:6
**interpreted** 10:10
**Iowa** 8:16 9:13,14 10:7 11:14,19,22 12:3 16:19,22 17:25 20:7,11,13,19,20,25 21:6,7,12,14,16,17, 25 22:2,5,10,20 23:15,16
**Iowa's** 8:12
**Iowans** 22:9
**issue** 15:2
**issues** 14:9,12

**J**

**Jenness** 16:2
**job** 12:14 14:7
**Johnson** 14:21
**Jones** 7:15
**journals** 6:17
**Jules** 18:18,21
**July** 16:21 18:7,10, 14

IOWA LIBERTARIAN PARTY, et al., vs PAUL D. PATE
RICHARD WINGER  08/18/2020

Index: June..principle

**June** 14:19 18:6

**jurisdictions** 5:10 7:9

**K**

**Kennedy** 14:18

**Keriann** 6:2 24:21

**killed** 14:19

**kind** 10:3,10,11

**knowledge** 21:18

**L**

**Large** 9:6

**last** 19:3

**late** 18:7,10

**law** 4:13 5:9 16:9 18:9 20:11,19 21:14,17

**laws** 4:20,22 5:8,13

**lawsuit** 21:9 22:13, 14,15

**least** 9:23 12:1

**legal** 6:17 8:23 15:6

**legislative** 23:18,20

**legislature** 11:20

**less** 17:5

**liberal** 10:5

**liberally** 10:11

**Libertarian** 10:6 12:16,23 13:3,4,7 14:3 20:7 21:8,12,16 22:1,6,10,17

**Libertarians** 22:23

**lights** 19:4

**list** 6:23 11:15 17:22

**listing** 22:25

**lists** 7:11

**litigation** 5:3

**little** 6:8 15:23 16:18

17:4

**long** 5:12 17:5 19:24

**lost** 21:24

**lot** 13:11 16:6

**low** 11:19

**lowest** 12:8

**lump** 12:4

**Lyndon** 14:21

**M**

**Macbride** 22:3

**made** 5:24 17:25

**maintain** 4:15

**major** 6:10 8:25 15:15 16:10 17:20 18:1,3 20:13

**majority** 12:25 13:7, 10

**make** 19:14 20:11 21:24

**makes** 12:11

**making** 23:25

**man** 12:19

**March** 10:19 11:1,2, 9,23 12:10 13:17,22 14:13,21 15:1,11 17:5 23:7,12

**marked** 24:24

**Matt** 18:18,24 19:8

**matters** 15:8

**meaning** 24:10

**meeting** 10:4,11 18:7

**member** 22:9

**members** 7:4 12:15 23:2

**mention** 21:5

**mentioned** 12:10

**mentions** 14:20

**mid** 5:14 14:13 15:1,

11

**middle** 10:19 11:1, 25

**mind** 19:17

**minor** 4:21 5:4 6:20 7:1,7,21 8:1,13,17, 22 9:15,20 10:15 11:10,16,18 12:5,11, 13 13:13 15:10 16:1, 9 18:1 20:13

**minority** 21:6

**mistakes** 24:14

**Molly** 15:6

**monthly** 4:13

**moved** 15:9

**N**

**nasty** 19:8

**national** 14:4

**nature** 7:19

**News** 4:14

**newsletter** 4:14 5:14,17,19

**nine** 12:6

**nomenclature** 8:17 9:14

**nominate** 9:6,10 23:14

**nominees** 9:9 10:1

**non-party** 9:15 15:13,14 20:14 21:13 22:18

**non-political** 23:15

**non-presidential** 15:10 18:2

**noticed** 16:19

**notion** 16:23

**November** 17:6 21:20

**number** 6:24 7:8 11:18 12:7,8,17

**O**

**object** 18:18

**objectionable** 16:24 17:5

**observe** 12:8

**observed** 11:12

**occurred** 6:10 7:12

**OFENBAKH** 18:22

**office** 9:24 10:18 23:21,22

**one-day** 10:3,12

**one-place** 10:3

**one-spot** 10:12

**opinion** 15:16

**opposed** 23:7

**organization** 21:14 22:19 23:16

**organizations** 9:16 15:14 20:15

**P**

**p.m.** 25:1

**pages** 19:25

**paid** 14:3,5 23:3,9

**particular** 8:19 13:13 15:17 16:7 17:11 20:10

**parties** 4:21,22 6:20 7:1,5,7,21 8:1,13,17, 18,19,22 9:1,2,6,15, 20 11:10 12:5,11,13 13:13 15:21,22,23 16:1 17:20 18:3,12 20:13,14

**parts** 19:11

**party** 5:4 7:15 9:7,22 10:6,15 11:16,18 12:16,23,24 13:3,11 14:4 15:10,15 16:9, 10 18:2,6,7 20:7,18, 19,21 21:2,3,8,12, 16,17 22:1,6,10,17,

18 23:15

**Pate** 5:25

**people** 7:4 12:21

**percent** 9:23 20:22 21:8,20,22

**period** 17:14 23:7,8

**permitted** 22:10

**persuade** 12:15,22

**petition** 9:8 10:1,4, 8,12 23:14

**petitions** 23:25

**phone** 19:15

**pick** 18:7

**Plaintiffs** 4:3

**pleasure** 19:14

**point** 13:2 24:4

**political** 5:4 6:25 7:7 8:13,23 9:15 10:15 11:10 13:13 15:14,21,22 20:14, 15,19 21:13,17 22:6, 18

**position** 4:12

**potential** 24:1

**preceding** 9:25

**predicted** 15:4

**prefer** 24:16

**president** 10:9,16 18:11 20:23 21:21 22:2,4

**presidential** 10:21 11:25 17:12,15,16, 21 20:23

**Press** 6:18

**pretty** 19:8,24 21:23

**pride** 13:2

**primaries** 9:9 16:25

**primary** 7:17,22 9:7 16:20,21 17:2 18:5, 6,13

**principle** 17:4

print 4:13

prior 11:22 12:3

problem 10:8

procedure 21:1

procedures 8:12
10:2

process 6:21 7:8,22
8:2 24:4

professional 14:2

progresses 14:10

promote 15:17

provided 5:22
24:10

provision 18:9

publish 4:13

pulled 9:23

pulling 21:20

pulls 20:22

purposes 8:8

put 22:24

**Q**

qualified 7:6 9:6,7,
22 18:6 20:21 21:3,
17

qualifies 16:14
20:19

qualify 8:13 9:20
16:12 17:17

qualifying 15:13
17:10

question 13:20
20:2,4

questions 18:18,
19,23 19:17 20:10
23:6 24:7

quote 8:19

quotes 14:15,17

**R**

race 18:10

rationale 15:8,12,16

re-election 14:22

read 19:7 24:9,11,15

readers 4:20

realized 17:16

recall 12:2

recent 10:20 15:5

recently 13:12

recognized 15:19

reconvening 19:4

record 4:8

recording 24:12

recruit 11:12 12:12
13:16,21 14:6

recruiter 14:3

recruiters 12:14

recruiting 23:9

refer 20:2,5

referred 8:18

reflection 6:7

reflects 6:14

register 7:4 22:9

registered 22:23
23:2,17,19

registration 4:23
22:11,22

relate 6:25 7:3 14:1

relating 6:25

remember 12:19

report 19:18,21 20:6

Reporter 4:4 6:3

Republicans 9:2
16:20

request 23:4

required 23:11

research 16:18

reserve 8:7

resident 23:19

results 16:3

resume 5:22 6:14
7:11

returns 4:23

reviews 4:24

Richard 4:2,10 24:8

Robert 14:18

Roger 22:3

run 12:16,24 14:22
15:21 17:8

**S**

same 5:18 11:24
15:13 16:9,12,14
17:9 18:24

schedule 19:3

science 8:23

season 17:10

second 6:14

Secretary 5:25 10:9
11:14 15:7 17:9,19
22:21

seek 7:25

seldom 10:2,13

sense 8:23

separate 17:14

September 16:20,
22,25 17:1

Seventeen 9:5

several 6:15 22:25

shocking 14:20,23

shorter 24:18

Shorthand 4:4

shot 14:18

show 7:21

shows 22:21

shut 5:7

sign 23:14 24:9

signatures 23:11

signer 23:22

similarly 15:24

simple 9:4

site 4:15

situated 15:24

situation 19:10

slots 18:15

small 9:7 19:24

smaller 9:2

smallest 11:17

sound 7:12

sounded 19:8

sounds 9:18

speaking 11:20

specific 20:4

staff 23:9

started 5:15,17

state 4:8 10:9 11:14
15:7,17 16:8 17:9,19
19:11 22:14,21

stated 17:7 18:14

states 5:1,10 9:5,13
15:20,24 16:25
20:21,25 21:1

states' 8:25

status 21:21,24
22:17

statutes 8:25

statutory 5:8

stipulate 8:2

storms 19:8

straight 20:12

strike 23:12

strong 15:20

studying 5:13

Successful 12:13

supposed 17:24
18:8

Supreme 7:16
14:14 15:25

sworn 4:4

**T**

talk 12:14,20 17:24
21:5

talked 20:12

task 21:2

template 9:5

tend 8:21

term 8:21

terms 20:11

testified 4:5 6:24

testimony 7:19 8:9
15:12 20:6 24:13,14

theory 13:6

thing 5:18

things 13:8 16:4

third 8:18,19,21
12:24

Thirty-nine 21:1

thought 10:9

three 12:6 19:25

threshold 21:9

time 10:18 11:12
15:13 16:13 17:9
18:2 21:19

times 13:12 22:25

timing 23:6

tiny 6:9

today 8:6 11:13 19:5

top 9:24 20:9

track 4:20 5:3

transcript 24:10

treating 16:4

IOWA LIBERTARIAN PARTY, et al., vs PAUL D. PATE
RICHARD WINGER  08/18/2020

treatment 17:25
  18:8

true 15:4

turn 21:2

two 9:5 15:20

----

**U**

----

U.S. 7:15 11:17,19
  12:4,25 14:14 15:25

Uh-huh 14:25

understanding
  9:19 13:19 20:16
  21:7 23:13

unified 13:4

United 5:10 15:20,
  24

unlike 20:20

unqualified 7:5
  21:2

unwilling 12:21

----

**V**

----

versus 7:15 14:15
  16:2,5

view 23:10

vitae 5:23

voir 8:3,5

volunteer 14:2,5

volunteers 13:14,
  17,22 23:9

vote 9:24 13:5 20:22

voter 4:23 22:11,21
  23:17,19 24:3

voters 13:6 24:1

----

**W**

----

wait 8:4

waiting 21:3

waive 24:15,20

wanted 21:5,21

web 4:15 11:14,15
  22:21,24

week 19:4

weeks 16:16

Widen 15:6 17:7

Winger 4:2,10 7:25
  8:4,6 19:2,6,14 22:8
  23:5

Winger's 24:22

wish 22:9

work 6:7 12:18
  13:11

worried 24:19

write 12:7

written 6:16

----

**Y**

----

year 10:17,18 11:2,
  22,23 12:3,20 13:23
  14:9,19,25 17:1,2
  20:23,24 21:25

years 12:7,20 16:22
  17:12,16 22:15

Richard Winger Curriculae Vitae
3201 Baker Street
San Francisco, California 94123
Updated Oct. 11, 2019

EDUCATION
BA, Political Science, University of California, Berkeley, 1966
Graduate study, Political Science, UCLA, 1966-67

EMPLOYMENT
*Ballot Access News*, Editor 1985-Present
Editor of newsletter covering legal, legislative and political developments of interest to minor parties and independent candidates. Researcher of ballot access laws of all 50 states from years 1888-present; well versed in how ballot access laws of each state work historically and how they compare to each other. Responsible for reading all statutes, regulations, legal opinions, and state attorney general opinions on rights of political parties and the publications of minor parties.

On the Editorial Board of *Election Law Journal*, published by Mary Ann Liebert, Inc., Larchmont, N.Y., since 2001.

PUBLICATIONS
Wrote a chapter or two in each of these books:

*The Best Candidate: The Law of Presidential Nomination in Polarized Times* to be published by the Cambridge University Press, 2020, editors Eugene D. Mazo and Michael R. Dimino. My chapter is "The Nomination of Presidential Candidates by Minor Parties."

*America Votes! A Guide to Modern Election Law and Voting Rights,* 2nd edition, 2012, published by the American Bar Association's Section of State and Local Government Law, editor Benjamin E. Griffith.

*Others, Vol. 2, Third Parties During The Populist Period,* by Darcy G. Richardson (2007: iUniverse, Inc., New York). Wrote the book's Appendix, "Early Ballot Access Laws for New and Minor Parties."

*Democracy's Moment*
edited by Ronald Hayduk and Kevin Mattson (2002: Rowman & Littlefield, Lanham, Md.)

*The Encyclopedia of Third Parties in America*
edited by Immanuel Ness and James Ciment (2000: M.E. Sharpe, Inc., Armonk, N.Y.)

*Multiparty Politics in America*
edited by Paul S. Herrnson (1997: Rowman & Littlefield, Lanham, Md.)

*The New Populist Reader*

1

edited by Karl Trautman (1997: Praeger, Westport, Ct.)

Additional articles published in these periodicals:
*University of Arkansas Little Rock Law Review,* Vol. 29, #4, summer 2007
*Wall Street Journal,* October 1984 and also October 1988 (exact dates unknown)

*The Long Term View,* Mass. Sch. of Law, vol. 2 #2 (spring 1994)
*American Review of Politics,* U. of Akron, vol. 16, Winter 1995
*California Journal,* July 1977
*Election Law Journal* (two articles), Vol. 1 #2 (2002) and Vol. 5 #2 (2006)
*Cleveland State Law Review,* Vol. 45 #1 (1997)
*Chronicles Magazine,* November 1994
*Price Costco Connection,* Dec. 1995
*Fordham Urban Law Journal,* Vol. 32 #3 (May 2005)
*Fordham Law Review,* Vol. 85 #3 (December 2016)
*Oklahoma Politics,* Vol. 8 (October 1999)
*Harvard Law Record,* internet, April 25, 2016

Also, I wrote "Election Law Decisions" in all issues of the newsletter of the American Political Science Association's Section on Representation and Electoral Systems, 2005-2014. The publication appeared twice each year.

I wrote articles for "Voice for Democracy", the newsletter of Californians for Electoral Reform, in these issues: Spring 2012, February 2014, August 2014, November 2014, and February 2015.

NATIONAL INTERVIEWS on Minor Parties, Independents, Ballots and Ballot Access

| | |
|---|---|
| *NBC* | *National Public Radio* |
| *ABC* | *Pacifica Radio* |
| *CNN* | *MSNBC* |
| *C-SPAN* | |

CASES:   TESTIMONY or AFFIDAVITS (political party or candidate prevailing, or case pending)

**Alabama:** Hall v Bennett, U.S. Dist. Ct., 212 F.Supp.3d 1148 (m.d. 2016).

**Alaska:** Libertarian Party v Coghill, state superior court, 3rd dist., 3AN-92-08181, 1992: court enjoined petition deadline for minor party presidential petitions.

**Arizona:** Campbell v Hull, 73 F Supp 2d 1081 (1999). Az. Libt. Party v Hull, superior ct., Maricopa Co. 96-13996, 1996: deadline for submitting presidential elector candidates too early. Nader v Brewer, 531 F 3d 1028 (9th cir., 2008). De La Fuente v Hobbs, 19-16868 (pending in 9th circuit): signature requirement for independent candidates.

**Arkansas:** Citizens to Establish a Reform Party v Priest, 970 F Supp 690 (E.D. Ark. 1996). Green Party of Ark. v Priest, 159 F.Supp.2d (E.D. Ark. 2001). Green Party of Ark. v Daniels, U.S. District Court, 448 F.Supp 2d 1056 (E.D.Ark. 2006). Moore v Martin, 854 F 3d 1021. Libertarian Party of Arkansas v Thurston, e.d., 4:19cv-214 (2019): signature requirement for new parties.

2

000032

**California:** California Democratic Party v Jones, 530 US 567 (2000). California Justice Committee v Bowen, 2012 WL 5057625 (C.D.Cal.): deadline for new party qualification too early.

**Colorado:** Ptak v Meyer, 94-N-2250, U.S. Dist. Ct., 1994. Signature requirement for independent legislative candidates.

**Florida:** Libt. Party of Fla. v Mortham, 4:96cv258-RH, n.d. 1996: Libertarian vice-presidential candidate put on ballot even though he was not on the petition. Reform Party v Black, 885 So.2d 303 (Fla. 2004).

**Georgia:** Bergland v Harris, 767 F 2d 1551 (11th cir., 1985). Remanded case back to U.S. District Court; before District Court acted, legislature substantially eased law, so case became moot. Green Party of Georgia v Kemp, 171 F Supp 3d 1340 (n.d. 2016), affirmed, 674 F.Appx. 974 (11th cir., 2017). Libertarian Party of Georgia v Raffensperger, n.d., 1:17cv-4660: number of signatures for U.S. House; law upheld on September 23, 2019 but either a rehearing request or an appeal will be filed.

**Hawaii:** Libt. Party of Hi. v Waihee, cv 86-439, U.S. Dist. Ct., 1986: petition deadline for new parties.

**Illinois:** Nader v Ill. State Bd. of Elections, 00-cv-4401, U.S. Dist. Ct., N.D., 2000: petition deadline enjoined. Lee v Ill. State Bd. of Elections, 463 F.3d 763 (7th cir. 2006). Jones v McGuffage, 921 F Supp 2d 888 (N.D.. Il, 2013). Libertarian Party of Illinois v Scholz, 164 F Supp 3d 1023 (n.d. 2016), affirmed 872 F.3d 518 (7th cir., 2017). Gill v Scholz, central dist., 3:16cv-3221: case pending in 7th circuit on 5% petition requirement for independent candidates for U.S. House; U.S. District Court put candidate on ballot, but 7th circuit stayed that action. Jones v McGuffage, n.d., 1:12cv-9997: number of signatures in special U.S. House elections; judge reduced number of signatures.

**Iowa:** Oviatt v Baxter, 4:92-10513, U.S. Dist. Ct., 1992: signature requirement for U.S. House candidates.

**Kansas:** Merritt v Graves, 87-4264-R, U.S. Dist. Ct., 1988: independent petition deadline, requirement that independent petitions not be circulated outside of circulator's home precinct, and requirement that voters could only register in qualified parties. This case should not be confused with another by the same name decided in December, 1988.

**Kentucky:** Libt. Pty. of Ky. v Ehrler, 776 F Supp 1200 (E.D. 1991). Sweeney v Crigler, e.d., 2:19cv-46 (2019): deadline for declaration of candidacy.

**Maine:** Libertarian Party of Me v Dunlap, 2:16cv-2: deadline for new party.

**Maryland:** Dixon v Md. State Adm. Bd. of Elec. Laws, 878 F 2d 776 (1989, 4th cir.). Green Party v Bd. of Elections, 832 A 2d 214 (Md. 2003).

**Michigan:** Graveline v Johnson, 336 F.Supp.3d 801 (e.d. 2018), affirmed, 747 F Appx 408 (6th circuit 2018). Number of signatures for independent candidates.

**Montana:** Kelly v Johnson, U.S. Dist. Ct. 08-25 (2012): independent candidate petition deadline. Breck v Stapleton, 259 F.Supp.3d 1126 (2017). Montana Green Party v Stapleton, 6:18cv-87.

**Nebraska:** Bernbeck v Gale, 4:18cv-3073 (2018). Number of signatures for independent candidates.

**Nevada:** Libt Pty. of Nev. v Swackhamer, 638 F Supp 565 (1986); Fulani v Lau, cv-N-92-535, U.S. Dist. Ct., 1992: minor party and independent petition deadline.

**New Jersey:** Council of Alternative Political Parties v Hooks, 999 F Supp 607 (1998); Council of Alternative Political Parties v State Div. of Elections, 781 A 2d 1041 (N.J.Super. A.D. 2001).

000033

**New York**: Molinari v Powers, 82 F Supp 57 (E.D.N.Y. 2000). Schulz w Williams, 44 F 3d 48 (2nd cir., 1994). Green Party of N.Y. v N.Y. State Bd. of Elections, 389 F.3d 411 (2nd cir., 2004).

**North Carolina**: Obie v N.C. Bd. of Elections, 762 F Supp 119 (E.D. 1991). DeLaney v Bartlett, 370 F.Supp.2d 373 (M.D. 2004). Edwards v Berger, Wake County Superior Court, 18-cvs-9749 (2018): state could not give party labels to some candidates, but not all candidates, for the same office.

**Ohio**: Libertarian Party of Ohio v Blackwell, 462 F.3d 579 (6th cir. 2006). Libertarian Party of Ohio v Husted, U.S. Dist. Ct., middle district, 2:13cv-935 (2014): state could not create a new petition in September of odd year before election and expect it to be used in following year.

**Oklahoma**: Atherton v Ward, 22 F Supp 2d 1265 (W.D. Ok. 1998). De La Fuente v Ziriax, had been pending in 10th circuit, 17-6010, then legislature eased requirement for independent presidential candidates so case became moot.

**Pennsylvania**: Patriot Party of Pa. v Mitchell, 826 F Supp 926 (E.D. 1993).

**South Dakota**: Nader v Hazeltine, 110 F Supp 2d 1201 (2000). Libertarian Party of South Dakota v Krebs, 2018, 4:15cv-4111.

**Tennessee**: Libt Party v Goins, U.S. Dist. Ct., 793 F Supp 1064 (M.D. 2010). Green Party of Tennessee v Hargett, 7 F.Supp.3d 772 (m.d. 2014), aff'm, 791 F.3d 684 (6th cir. 2015): this is the case that struck down the law on how a party remains on the ballot, and should not be confused with the case of the same name on the requirements for a party getting on the ballot.

**Texas**: Pilcher v Rains, 853 F 2d 334 (5th cir., 1988).

**Virginia**: Libt. Pty of Va. v Quinn, 3:01-cv-468, U.S. Dist. Ct., E.D. (2001): court ordered state to print "Libertarian" party label on ballot next to names of candidates.

**West Virginia**: State ex rel Browne v Hechler, 476 SE 2d 559 (Supreme Court 1996). Nader v Hechler, 112 F.Supp.2d 575 (S.D.W.V., 2000). McClure v Manchin, 301 F Supp 2d 564 (2003).

CASES: TESTIMONY or AFFIDAVITS (political party or candidate not prevailing)

**Alabama**: Swanson v Bennett, 490 F.3d 894 (11th cit. 2007). Stein v Chapman, 774 F.3d 689 (11th cir., 2014). De La Fuente v Merrill, m.d., 2:16cv-755: whether sore loser law applies to presidential primaries.

**Arizona**: Indp. Amer. Party v Hull, civ 96-1240, U.S. Dist. Ct., 1996: petition deadline for new parties. Browne v Bayless, 46 P 3d 416 (2002). Arizona Libertarian Party v Hobbs, 925 F.3d.1085 (2019).

**Arkansas**: Langguth v McKuen, LR-C-92-466, U.S. Dist. Ct., E.D., 1992: petition deadline for independent candidates. Christian Populist Party v Sec. of State, 650 F Supp 1205 (E.D. 1987). Green Party of Ark. V Martin, 649 F.3d 675 (8th cir. 2011).

**California**: Socialist Workers Party v Eu, 591 F 2d 1252 (9th cir., 1978). Independent Party v Padilla, 184 F.Supp.3d 791 (Cal.,e.d. 2016). De La Fuente v Padilla, 930 F.3d 1101 (9th cir. 2019).

**D.C.**: Libertarian Party v D.C. Bd. of Elections, 682 F.3d 72 (D.C. Cir. 2012).

**Florida**: Fulani v Smith, 92-4629, Leon Co. Circuit Court, 1992: deadline for write-in filing. Libertarian Party of Fla. v State of Fla., 710 F 2d 790 (11th cir., 1983). U.S. Taxpayers Party v Smith, 871 F.Supp. 426 (n.d. Fla. 1993).

4

**Georgia**: Libertarian Party of Ga. v Cleland, U.S. Dist. Ct., n.d., 1:94-cv-1503-CC, U.S. Dist. Ct., N.D. (1994): number of signatures. Amendola v Miller, U.S. Dist. Ct, n.d., 1:96cv-2103 (1997): number of signatures. Esco v Secretary of State, E-53493, Fulton Co. Superior Court, 1998: number of signatures. Cartwright v Barnes, 304 F 3d 1138 (11th cir., 2002): number of signatures. Coffield v Kemp, 599 F.3d 1276 (2010): number of signatures.

**Idaho**: Nader v Cenarrusa, cv 00-503, U.S. Dist. Ct., 2000: number of signatures.

**Illinois**: Libt Party v Rednour, 108 F 3d 768 (7th cir., 1997). Nader v Keith, 385 F.3d 729 (7th cir. 2006). Summers v Smart, 65 F.Supp. 3d 556 (n.d. Ill. 2014).

**Kansas**: Hagelin for President Committee v Graves, 804 F Supp 1377 (1992).

**Maine**: Maine Green Party v Diamond, 95-318, U.S. Dist. Ct., 1995: definition of qualified party. Maine Green Party v Secretary of State, 96-cv-261, U.S. Dist. Ct., 1996: definition of political party.

**Maryland**: Ahmad v Raynor, R-88-869, U.S. Dist. Ct., 1988: number of signatures. Creager v State Adm. Bd. of Election Laws, AW-96-2612, U.S. Dist. Ct., 1996: number of signatures.

**Missouri**: Manifold v Blunt, 863 F 2d 1368 (8th cir. 1988).

**New Hampshire**: Werme v Gov. of N.H., 84 F 3d 479 (1st cir., 1996).

**New Mexico**: Parker v Duran, 180 F Supp 3d 851 (2014).

**North Carolina**: Nader v Bartlett, 00-2040, 4th cir., 2000: number of signatures.

**North Dakota**: Libertarian Party of N.D. v Jaeger, 659 F 3d 689 (2011).

**Ohio**: Schrader v Blackwell, 241 F 2d 783 (6th cir., 2001). State ex rel Fockler v Husted, State Supreme Court, 2016-1863: rules for primary ballot access. Libertarian Party of Ohio v Ohio Secretary of State, state appeals court, 10th dist., 16APE-07-496: definition of political party.

**Oklahoma**: Rainbow Coalition v Okla. State Elec. Bd., 844 F 2d 740 (1988). Nader v Ward, 00-1340, U.S. Dist. Ct., 1996: number of signatures. Clingman v Beaver, 544 U.S.581.

**Oregon**: Libt Party v Roberts, 737 P 2d 137 (Ore. Ct. of Appeals, 1987).

**Tennessee**: Green Party of Tennessee v Hargett, 882 F.Supp.2d 959 (m.d. 2012) and 953 F.Supp.2d 816 (m.d. 2013) (not to be confused with the case of the same name on how a party remains on the ballot). The final decisions are not reported and are 2016 US Dist Lexis 109161 (2016) and Sixth Circuit case 16-6299 (2017).

**Texas**: Texas Indp. Party v Kirk, 84 F 3d 178 (5th cir., 1996). Nat. Comm. of U.S. Taxpayers Party v Garza, 924 F Supp 71 (W.D. 1996). Kennedy v Cascos, 214 F.Supp.3d 559 (w.d. Tex, 2016).

**Virginia**: Wood v Meadows, 207 F 3d 708 (4th cir., 2000).

**Washington**: Washington State Republican Party v Washington State Grange, 876 F.3d 794 (2012).

**West Virginia**: Fishbeck v Hechler, 85 F 3d 162 (4th cir., 1996).

**Wyoming**: Spiegel v State of Wyoming, 96-cv-1028, U.S. Dist. Ct., 1996: petition deadline.

QUALIFIED EXPERT WITNESS
Fishbeck v Hechler, 85 F 3d 162 (4th cir. 1996, West Virginia case)
**Council of Alternative Political Parties v Hooks**, 999 F Supp 607 (1998, N.J.)
**Citizens to Establish Reform Party v Priest**, 970 F Supp 690 (E.D. Ark, 1996)
**Atherton v Ward**, 22 F Supp 2d 1265 (W.D.Ok. 1998)

5

*Calif. Democratic Party v Jones*, 530 US 567 (2000)
**Swanson v Bennett,** not reported, U.S. Dist. Ct., m.d.Ala. (02-T-644-N)
**Clingman v Beaver,** 544 U.S. 581.
**Green Pty v N.Y. Bd. Elec.,** 267 F Supp 2d 342 (EDNY 2003), 389 F.3d 411 (2nd 2004)
**Lawrence v Blackwell,** 430 F.3d 368 (6th cir. 2005)
**Hall v Merrill,** 212 F.Supp.3d 1148 (Alabama m.d. 2016)
**Graveline v Johnson,** 336 F.Supp.3d 801 (e.d. Mi. 2018), aff'm 747 F Appx 408 (6th cir. 2018)
**Green Party of Tennessee v Hargett,** 882 F.Supp.2d 959 (m.d. Tn. 2012); also 953 F.Supp.2d 816 (same)
**De La Fuente v Padilla,** 930 F.3d 1101 (9th cir. 2019)
**De La Fuente v State of Arizona,** 2:16cv-2419 (2019)

CASES IN WHICH DECISION MENTIONED MY EVIDENCE AND EITHER STRUCK DOWN OR ENJOINED THE LAW

**Hall v Merrill,** 212 F.Supp.3d 1148 (m.d. Ala. 2016), footnote 10. Eleventh Circuit later ruled that case was moot when it was decided and therefore vacated the decision, 902 F.3d 1294.
**Citizens to Establish a Reform Party in Arkansas v Priest,** 970 F.Supp.690 (e.d. 1996) at 695.
**Green Party of Arkansas v Priest,** 159 F.Supp.2d 1140 (e.d. 2001). Decision cites my evidence at p. 1143 but doesn't name me.
**Green Party of Arkansas v Daniels,** 445 F.Supp.2d 1056 (e.d. 2006) at 1059ff
**Libertarian Party of Arkansas v Thurston,** e.d. 4:19cv-214 (July 3, 2019)
**California Justice Committee v Bowen,** 2012 WL 5057625 (Oct. 18, 2012)
**Green Party of Georgia v Kemp,** 171 F.Supp.3d 1340 (n.d. 2016); aff'm, 674 F Appx 974 (11th cir. 2017)
**Gill v Scholz,** U.S. Dist. Ct., n.d. Ill. 16cv-3221. Court enjoined law and put candidate on ballot. Then the 7th circuit issued a one-sentence order removing the candidate from the ballot but not explaining why. Then another U.S. District Court Judge upheld law. Case is pending in the 7th circuit.
**Jones v McGuffage,** 921 F.Supp.2d 888 (2017) at 893.
**Lee v Keith,** 463 F.3d 763 (7th cir. 2006) at 766 (decision uses my evidence but does not name me)
**Libertarian Party of Illinois v Illinois State Bd. of Elections,** 164 F.Supp.3d 1023 (n.d. 2016). See footnote four.
**Graveline v Johnson,** 336 F.Supp.3d 801, aff'm 747 F Appx 408 (6th cir. 2018)
**Breck v Stapleton,** 6:18cv-87 (2017).
**Green Party of N.Y. v N.Y. State Board of Elections,** 389 F.3d 411 (2004) at 421
**Libertarian Party of Ohio v Blackwell,** 462 F.3d 579 (6th cir. 2006) at 589
**Libertarian Party of Ohio v Husted,** 2014 WL 11515569 (s.d. Oh. Jan. 7, 2014)(opinion misspells my surname as "Wagner")
**Libertarian Party of South Dakota v Krebs,** 290 F.Supp.3d 902 (2018)
**Libertarian Party of Tennessee v Goins,** 793 F.Supp.2d 1064 (m.d. 2010) at 1068
**Green Party of Tennessee v Hargett,** 882 F.Supp.2d 959 (m.d. 2012) at 976ff; on remand, 953 F.Supp.2d 816 (m.d. 2013) under heading "Parties' Expert Proof)

6

LIST OF ALL CASES IN LAST FOUR YEARS IN WHICH I TESTIFIED AT TRIAL OR AT DEPOSITION

**Green Party of Georgia v Kemp** (deposition 2015)
**Green Party of Tennessee v Hargett** (trial 2016)
**Libertarian Party of Illinois v Illinois State Election Board** (deposition 2017)
**De La Fuente v Padilla** (deposition 2017, California)
**Kennedy v Cascos** (court hearing 2016, Texas)
**Libertarian Party of South Dakota v Krebs** (trial 2018)
**Libertarian Party of Georgia v Raffensperger** (deposition 2019)
**Montana Green Party v Stapleton** (deposition 2019)
**Sweeney v Crigler** (deposition 2019)

SPEAKING ENGAGEMENTS:  Colleges and Scholarly Meetings

Panel of New York City Bar Association, 1994.  Ballot access.
Amer. Political Science Assn., nat. conventions of August 1995 and August 1996.  Papers.
Capital University School, law school class, Columbus, Ohio, 1996.  Guest lecturer.
Cal. State U., course in political science, Hayward, 1993 and 1996.  Guest lecturer.
San Francisco City College, course in political science, 1996 and 1997.  Guest     lecturer.
Providence College, R.I., Oct. 1997, seminar on ballot access.
Harvard U., JFK School of Gov't, Oct. 18, 1995, guest lecturer, ballot access.
Voting Integrity Project national conference, Apr. 1, 2000, speaker on ballot access.
Center for Voting & Democracy nat. conference, Nov. 30, 2003, speaker on ballot access.
Robert Dole Institute of Politics, U. of Kansas, one of 5 panel members, Oct. 25, 2007.

000037

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

IOWA LIBERTARIAN PARTY,
and JAKE PORTER,

    Plaintiffs,

vs.

    Civil No. 4:19-cv-00241

PAUL D. PATE, Secretary
of State and State
Commissioner of
Elections,

    Defendant.

ZOOM DEPOSITION OF WILLIAM REDPATH,
taken by the Plaintiffs before Lou Ann Parker,
Certified Shorthand Reporter and Notary Public of
the State of Iowa, commencing at 2:30 p.m., Friday,
October 9, 2020, at the location of each
participant.

Reported by:  Lou Ann Parker, CSR, RPR (Via Zoom)

(515) 288-2288    PARKER REPORTING, LTD.    laparkerphd@gmail.com

---

**APPEARANCES**

ROBERT M. BASTRESS, JR., ESQ., Attorney at Law, P.O. Box 1295, Morgantown, WV 26507, appearing on behalf of the Plaintiffs. (Via Zoom)

JULIA A. OFENBAKH, ESQ., Iowa Defenders, PLLC, 2183 86th Street, Suite C, Clive, IA 50325, appearing on behalf of the Plaintiffs. (Via Zoom)

MATTHEW L. GANNON, ESQ., Assistant Attorney General, 1305 E. Walnut Street, Des Moines, IA 50319, appearing on behalf of the Defendants. (Via Zoom)

(515) 288-2288    PARKER REPORTING, LTD.    laparkerphd@gmail.com

---

3

**INDEX OF EXAMINATION**

| LAWYER | PAGE |
| --- | --- |
| MR. BASTRESS | 4 |
| MR. GANNON | 11 |

**INDEX OF EXHIBITS**

EXHIBIT  DESCRIPTION        REFERRED TO ON PAGES
(No exhibits were marked or referred to by number.)

CONCLUSION AT 2:49 P.M. .................... 14
CERTIFICATE OF REPORTER .................. 15
SIGNATURE PAGE ............................ 16
ERRATA SHEET .............................. 17

(515) 288-2288    PARKER REPORTING, LTD.    laparkerphd@gmail.com

---

4

**PROCEEDINGS**

WILLIAM REDPATH,
called as a witness, having been first duly sworn, was examined and testified as follows:

    ***

MR. BASTRESS:  Well, I can vouch for the record that parties have agreed that we should do this deposition remotely and not in the physical presence of the court reporter.

MR. GANNON:  No objection to that.

    ***

**EXAMINATION**

BY MR. BASTRESS:

Q.    Would you state your name, please?

A.    My name is William Redpath.

Q.    Where do you live, Mr. Redpath?

A.    West Dundee, Illinois.

Q.    And what's your current occupation and employer?

A.    My current employer is Thomas Ridge Group, LLC. My occupation is I'm a business appraiser, financial consultant in the Media Telecom Satellite Sector.

Q.    Have you ever been deposed before,

(515) 288-2288    PARKER REPORTING, LTD.    laparkerphd@gmail.com

---

5

1    Mr. Redpath?
2        A.    Yeah.
3        Q.    How many times, approximately?
4        A.    I -- I think probably about 40, 40 times.
5        Q.    Okay. So you are very familiar with the
6    process?
7        A.    Yes.
8        Q.    Okay. Have you maintained a connection
9    with the Libertarian Party?
10       A.    Yes.
11       Q.    And what has that been?
12       A.    I've been a Libertarian Party member since
13   1984. In 1989 I was elected to the National
14   Committee. I served on the National Committee from
15   1989 until 1993 and again from 2003 to 2020.
16           During that time, I would say for the past
17   30 years, I've headed up -- of course, it's not a
18   one-man show.
19           THE REPORTER: Excuse me. It's not coming
20   through. I'm sorry, it's not coming through what
21   you are saying.
22           THE WITNESS: Tell you what, let me --
23   Maybe this will help. I will --
24           Okay, is that going to be better if I use
25   this? Is that better?

7

1    what does the -- what all is entailed by being
2    chair of the Ballot Access Committee?
3        A.    I would say running petition drives in
4    states where we need to petition to get the
5    Libertarian Party presidential ticket on the
6    ballot, sometimes running petition drives that do
7    not involve the Libertarian Party presidential
8    ticket. We initiate litigation at times when we
9    think we need to. We also work on lobbying, work
10   with various state parties on lobbying their
11   legislatures on ballot access matters, sometimes
12   working cooperatively with other minor parties on
13   ballot access matters. So that's what we do.
14       Q.    Okay. And this is a national effort that
15   you steer?
16       A.    Yes.
17       Q.    Through that experience have you become
18   familiar with what the procedures are in even most
19   or all states?
20       A.    Yes, I would say most.
21       Q.    Are you aware of any states that have a
22   filing deadline as early as Iowa's?
23       A.    I am not aware of any states that have a
24   filing deadline in March or before, other than
25   Iowa.

6

1            THE REPORTER: It sounds like it so far.
2            THE WITNESS: All right. Hopefully this
3    will work better. So I'm sorry, what would you
4    like me to do, Madam Court Reporter?
5            THE REPORTER: If you could go on from
6    what you were saying, for the past 30 years.
7        A.    For the past 30 years I've essentially
8    headed up the National Ballot Access numbers of the
9    Libertarian Party. I'm currently chairman of the
10   Ballot Access Committee, which is a subcommittee to
11   the Libertarian National Committee.
12       Q.    And what all does that entail?
13       A.    That's entails several things:
14           THE REPORTER: Sorry. It's not coming
15   through, sorry.
16           THE WITNESS: Okay. Let me, if I may,
17   tell you what, let me change computers since there
18   is a problem here of some sort. Let me try this on
19   another computer. I will call back in immediately
20   on a different computer. And hopefully that will
21   be better, okay? Okay.
22           (At this time, an off-the-record
23   discussion was held.)
24   BY MR. BASTRESS:
25       Q.    I think my last question I asked you was

8

1        Q.    And are you currently a candidate
2    yourself?
3        A.    Yes.
4        Q.    For what?
5        A.    For U.S. House of Representatives in
6    Illinois in the 6th Congressional District.
7        Q.    Okay. In your work with the ballot access
8    issues, would you describe what, if any, problems
9    are created by such an early deadline such as
10   March?
11       A.    I would say that it means that we cannot
12   spend as much time recruiting candidates. It's
13   hard to recruit candidates; it's hard enough for
14   the two older parties to recruit candidates, let
15   alone a minor party, so it means that we would have
16   to start earlier to recruit candidates and cut
17   things off earlier in terms of recruiting the
18   candidates.
19           Then for those candidates to get on the
20   ballot, if they have to petition with a March
21   deadline, they would have to petition during winter
22   or before. And that would be very difficult. It's
23   difficult to petition outside during the winter,
24   it's difficult for the petitioner to be out there
25   petitioning during the winter, and it's -- it's

9

1  difficult, more difficult to get people to stop to
2  sign a petition than it is in the spring or the
3  summer.
4        So -- so those are the problems.  And in
5  cutting things off early also means that people
6  cannot react to the developments in -- people
7  cannot react to developments in the political
8  landscape during the year, and perhaps in reaction
9  to issues that develop during that election year,
10  or candidates who win primaries from other parties
11  in that election year, people might feel stimulated
12  to step up and run for office, but with a March
13  deadline they would be foreclosed from doing that.
14      Q.   Does the cold weather make it, and the
15  fewer people are out, as well as the fact that they
16  are less willing to stop?
17      A.   Yes.  I have -- I have at times, because
18  I -- I have at times, because of my decision,
19  petitioned during the winter.  It happened to be in
20  Ohio petitioning, I was visiting people in Ohio in
21  the recent past.  This would have been in 2016 and
22  2017 at Christmas.  I was in Ohio for just a few
23  days visiting relatives.  I went out and I wanted
24  to petition, so that's when I had to petition in
25  Ohio if I ever wanted to do it, and I can attest

10

1  that when it's cold outside it's -- it's no fun to
2  be out there, and I can see that a lot fewer people
3  would be willing to do it, and definitely a lot
4  fewer people were willing to stop and sign.
5      Q.   Yeah.  And for the most part, you can't
6  have access from all private malls, can you?
7      A.   Generally not.  I would say that it's very
8  rare to be able to petition on private property
9  these days unless a state has access legislation.
10  There are some states that have access legislation
11  that mandate that petitioners be able to go into
12  malls or -- but if that -- if that is not the case,
13  then private property can be very difficult to find
14  and be granted permission to petition.
15      Q.   I take it from what you said earlier about
16  petitioning in Ohio that you, yourself, have
17  done -- solicited signatures?
18      A.   Oh, yes, I've been soliciting signatures
19  since 1988.
20      Q.   Have you ever solicited in Iowa?
21      A.   Yes.
22      Q.   And what was your experience -- When and
23  what was your experience during that?
24      A.   I petitioned in Iowa in Davenport and Iowa
25  City on Saturday, August 8th, and in Davenport on

11

1  Sunday, August 9, 2020.
2        My experience was, it was a very difficult
3  signature.  It was -- I found the petitioning in
4  terms of acceptance rate, potential signers, that
5  weekend I found the acceptance rate to be the
6  lowest I've ever experienced, with the exception of
7  petitioning in the District of Columbia.
8        MR. BASTRESS:  That's all I have.
9        Do you have any questions?
10        Well, let me ask you, if you don't mind,
11  Matt, if Jules has any questions, if you don't mind
12  her asking.
13        MR. GANNON:  I don't mind.
14        MS. OFENBAKH:  I don't.
15        MR. GANNON:  Okay.
16        MR. BASTRESS:  And, Matt, do you have any?
17        MR. GANNON:  Just one or two.
18                  ***
19              EXAMINATION
20  BY MR. GANNON:
21      Q.   Mr. Redpath, my name is Matt Gannon, I'm
22  an Assistant Attorney General for the Iowa Attorney
23  General's office, and I represent the Iowa
24  Secretary of State, Paul Pate, the Defendant, in
25  his official capacity in the lawsuit.

12

1        You just said that you have petitioned in
2  Iowa and that it was in August of 2020.  Who was
3  the candidate for whom you were petitioning?
4      A.   Jo Jorgensen and Jeremy "Spike" Cohen, the
5  presidential ticket of the Libertarian Party in
6  2020.
7      Q.   And it's your understanding that the
8  Libertarian presidential ticket does not have a
9  March deadline; is that correct?
10      A.   That is my understanding, that this March
11  deadline does not apply to the presidential ticket.
12      Q.   Okay.  And do you -- What is your
13  understanding of to what candidates the March
14  deadline applies to?
15      A.   I thought it was to all other candidates.
16  I -- That does not apply to president, but it is my
17  understanding it applies to other candidates.
18      Q.   Does it apply to candidates in the U.S.
19  Senate?
20      A.   To the best of my knowledge.
21      Q.   And do you know how many signatures are
22  required for a Libertarian Party to -- the
23  Libertarian or other party candidates for president
24  to appear on the ballot in Iowa?
25      A.   1,500 ballot signatures for president.

13

1      Q.    Are there any other rules as far as the
2   signatures?
3      A.    I -- I don't -- I don't know offhand.
4   I -- I -- I think they are supposed to be
5   registered voters is my -- is my understanding. I
6   certainly asked people if they were registered to
7   vote. So I -- I -- beyond that I'm not sure.
8      Q.    And do you know how many signatures are
9   required for a candidate for United States Senate
10  running as a Libertarian?
11     A.    I believe it's 1,500, as well. I'm not
12  certain of that.
13     Q.    And do you know how many signatures are
14  required for a candidate running for the Iowa State
15  Senate --
16     A.    I do not.
17     Q.    -- as a Libertarian?
18     A.    I do not.
19         MR. GANNON:  Okay. I don't have anything
20  further.
21         MR. BASTRESS:  Okay. Bill, I think you
22  know you have a right to read and sign, or you can
23  waive that. Do you have a preference?
24         THE WITNESS:  I'd like to read and sign,
25  please.

(515) 288-2288      PARKER REPORTING, LTD.      laparkerphd@gmail.com

14

1         MR. BASTRESS:  Okay. Can you give
2   Ms. Parker your -- where she could send the
3   transcript to?
4         THE WITNESS:  Yes. She could mail it to
5   1303, it's 1303 Westley Lane, W-E-S-T-L-E-Y Lane,
6   West Dundee, Illinois 60118.
7         MR. BASTRESS:  Okay. Well, that concludes
8   the deposition, than. Thank you, Mr. Redpath.
9         THE WITNESS:  Thank you.
10        MR. GANNON:  Thank you. Have a good
11  weekend.
12        (The deposition was concluded at 2:49
13  p.m.)
14
15
16
17
18
19
20
21
22
23
24
25

(515) 288-2288      PARKER REPORTING, LTD.      laparkerphd@gmail.com

15

1              CERTIFICATE
2   STATE OF IOWA
3   COUNTY OF POLK
4         I, Lou Ann Parker, a Certified Shorthand
      Reporter and Notary Public in and for the State of
5   Iowa, do hereby certify that the deponent was duly
      sworn by me, and that the transcript as above set
6   forth is a true and accurate record of the
      testimony given via Zoom.
7
         That the within and foregoing deposition
8   was taken by me at the time and place herein
      specified.
9
         That the witness through Counsel did ask
10  to read and sign the deposition.
11        That I am not counsel, attorney, or
      relative of either party or otherwise interested in
12  the event of this suit.
13     IN TESTIMONY WHEREOF, I have hereunto
      placed my hand OCTOBER __, 2020.
14
15
16        LOU ANN PARKER, CSR, RPR
          Commission 797528 Exp. 8/2/22
17
18
19
20
21
22
23
24
25

(515) 288-2288      PARKER REPORTING, LTD.      laparkerphd@gmail.com

16

1              SIGNATURE PAGE
2      I do hereby state that I have read my
3   deposition and that I have noted any changes I wish
4   to make on the Errata Sheet(s) attached hereto.
5
6   _____      _____
7   DATE                     WILLIAM REDPATH
8
9   STATE OF _____
10  COUNTY OF _____
11
12     Subscribed and sworn to before me on
13  _____ by WILLIAM REDPATH.
14
15  _____
16              Notary Public
17
18  My commission expires _____.
19
20
21
22
23
24
25

17

1    ERRATA SHEET ___ OF ___ - WILLIAM REDPATH

2    PAGE____LINE_____CHANGE_____

3    REASON_____

4    PAGE____LINE_____CHANGE_____

5    REASON_____

6    PAGE____LINE_____CHANGE_____

7    REASON_____

8    PAGE____LINE_____CHANGE_____

9    REASON_____

10   PAGE____LINE_____CHANGE_____

11   REASON_____

12   PAGE____LINE_____CHANGE_____

13   REASON_____

14   PAGE____LINE_____CHANGE_____

15   REASON_____

16   PAGE____LINE_____CHANGE_____

17   REASON_____

18   PAGE____LINE_____CHANGE_____

19   REASON_____

20   PAGE____LINE_____CHANGE_____

21   REASON_____

22   PAGE____LINE_____CHANGE_____

23   REASON_____

24   PAGE____LINE_____CHANGE_____

25   REASON_____

## 1

1,500 [2] - 12:25, 13:11
11 [1] - 3:4
1295 [1] - 2:2
1303 [2] - 14:5
1305 [1] - 2:6
14 [1] - 3:10
15 [1] - 3:11
16 [1] - 3:12
17 [1] - 3:13
1984 [1] - 5:13
1988 [1] - 10:19
1989 [2] - 5:13, 5:15
1993 [1] - 5:15

## 2

2003 [1] - 5:15
2016 [1] - 9:21
2017 [1] - 9:22
2020 [6] - 1:16, 5:15, 11:1, 12:2, 12:6, 15:13
2183 [1] - 2:4
26507 [1] - 2:2
2:30 [1] - 1:15
2:49 [2] - 3:10, 14:12

## 3

30 [3] - 5:17, 6:6, 6:7

## 4

4 [1] - 3:3
40 [2] - 5:4
4:19-cv-00241 [1] - 1:6

## 5

50319 [1] - 2:7
50325 [1] - 2:4

## 6

60118 [1] - 14:6
6th [1] - 8:6

## 7

797528 [1] - 15:16

## 8

8/2/22 [1] - 15:16
86th [1] - 2:4
8th [1] - 10:25

## 9

9 [2] - 1:16, 11:1

## A

able [2] - 10:8, 10:11
acceptance [2] - 11:4, 11:5
Access [3] - 6:8, 6:10, 7:2
access [6] - 7:11, 7:13, 8:7, 10:6, 10:9, 10:10
accurate [1] - 15:6
agreed [1] - 4:8
alone [1] - 8:15
Ann [3] - 1:13, 1:25, 15:4
ANN [1] - 15:16
appear [1] - 12:24
appearing [3] - 2:2, 2:5, 2:7
applies [2] - 12:14, 12:17
apply [3] - 12:11, 12:16, 12:18
appraisor [1] - 4:22
Assistant [2] - 2:6, 11:22
AT [1] - 3:10
attached [1] - 16:4
attest [1] - 9:25
attorney [1] - 15:11
Attorney [4] - 2:2, 2:6, 11:22
August [3] - 10:25, 11:1, 12:2
aware [2] - 7:21, 7:23

## B

Ballot [3] - 6:8, 6:10, 7:2
ballot [7] - 7:6, 7:11, 7:13, 8:7, 8:20, 12:24, 12:25
BASTRESS [10] - 2:2, 3:3, 4:7, 4:14, 6:24, 11:8, 11:16, 13:21, 14:1, 14:7

become [1] - 7:17
behalf [3] - 2:3, 2:5, 2:7
best [1] - 12:20
better [4] - 5:24, 5:25, 6:3, 6:21
beyond [1] - 13:7
bill [1] - 13:21
Box [1] - 2:2
business [1] - 4:22
BY [3] - 4:14, 6:24, 11:20

## C

candidate [4] - 8:1, 12:3, 13:9, 13:14
candidates [12] - 8:12, 8:13, 8:14, 8:16, 8:18, 8:19, 9:10, 12:13, 12:15, 12:17, 12:18, 12:23
cannot [3] - 8:11, 9:6, 9:7
capacity [1] - 11:25
case [1] - 10:12
CENTRAL [1] - 1:2
certain [1] - 13:12
certainly [1] - 13:6
CERTIFICATE [2] - 3:11, 15:1
Certified [1] - 1:14, 15:4
certify [1] - 15:5
chair [1] - 7:2
chairman [1] - 6:9
change [1] - 6:17
changes [1] - 16:3
Christmas [1] - 9:22
City [1] - 10:25
Civil [1] - 1:6
Clivo [1] - 2:4
Cohen [1] - 12:4
cold [2] - 9:14, 10:1
Columbia [1] - 11:7
coming [3] - 5:19, 5:20, 6:14
commencing [1] - 1:15
Commission [1] - 15:16
commission [1] - 16:17
Commissioner [1] - 1:8
Committee [5] - 5:14, 6:10, 6:11, 7:2
computer [2] - 6:19, 6:20

computers [1] - 6:17
concluded [1] - 14:12
concludes [1] - 14:7
CONCLUSION [1] - 3:10
Congressional [1] - 8:6
connection [1] - 5:8
consultant [1] - 4:23
cooperatively [1] - 7:12
correct [1] - 12:9
Counsel [1] - 15:9
counsel [1] - 15:11
COUNTY [2] - 15:3, 16:10
course [1] - 5:17
COURT [1] - 1:1
Court [1] - 6:4
court [1] - 4:10
created [1] - 8:9
CSR [2] - 1:25, 15:16
current [2] - 4:19, 4:21
cut [1] - 8:16
cutting [1] - 9:5

## D

DATE [1] - 16:6
Davenport [2] - 10:24, 10:25
days [2] - 9:23, 10:9
deadline [6] - 7:22, 7:24, 8:9, 8:21, 9:13, 12:9, 12:11, 12:14
decision [1] - 9:18
Defendant [2] - 1:10, 11:24
Defendants [1] - 2:7
Defenders [1] - 2:7
definitely [1] - 10:3
deponent [1] - 15:5
deposed [1] - 4:25
DEPOSITION [1] - 1:12
deposition [6] - 4:9, 14:8, 14:12, 15:7, 15:10, 16:3
Des [1] - 2:7
describe [1] - 8:8
DESCRIPTION [1] - 3:7
develop [1] - 9:9
developments [2] - 9:6, 9:7
different [1] - 6:20
difficult [7] - 8:22, 8:23, 8:24, 9:1, 10:13, 11:2

discussion [1] - 6:23
District [2] - 8:6, 11:7
DISTRICT [2] - 1:1, 1:1
DIVISION [1] - 1:2
done [1] - 10:17
drives [2] - 7:3, 7:6
duly [2] - 4:4, 15:5
Dundee [2] - 4:18, 14:6
during [8] - 5:16, 8:21, 8:23, 8:25, 9:8, 9:9, 9:19, 10:23

## E

early [3] - 7:22, 8:9, 9:5
effort [1] - 7:14
either [1] - 15:11
elected [1] - 5:13
election [2] - 9:9, 9:11
Elections [1] - 1:9
employer [2] - 4:20, 4:21
entail [1] - 6:12
entailed [1] - 7:1
entails [1] - 6:13
Errata [1] - 16:4
ERRATA [3] - 3:13, 17:1
ESQ [3] - 2:2, 2:4, 2:6
essentially [1] - 6:7
event [1] - 15:12
EXAMINATION [3] - 3:1, 4:13, 11:19
examined [1] - 4:4
exception [1] - 11:6
Excuse [1] - 5:19
EXHIBIT [1] - 3:7
EXHIBITS [1] - 3:6
exhibits [1] - 3:8
Exp [1] - 15:16
experience [4] - 7:17, 10:22, 10:23, 11:2
experienced [1] - 11:6
expires [1] - 16:17

## F

fact [1] - 9:15
familiar [2] - 5:5, 7:18
far [2] - 6:1, 13:1
few [1] - 9:22
fewer [3] - 9:15, 10:2, 10:4
filing [2] - 7:22, 7:24
financial [1] - 4:23
first [1] - 4:3

follows [1] - 4:5
FOR [1] - 1:1
foreclosed [1] - 9:13
foregoing [1] - 15:7
forth [1] - 15:6
Friday [1] - 1:15
fun [1] - 10:1

**G**

GANNON [9] - 2:6,
3:4, 4:11, 11:13,
11:15, 11:17, 11:20,
13:19, 14:10
Gannon [1] - 11:21
General [2] - 2:6,
11:22
General's [1] - 11:23
generally [1] - 10:7
given [1] - 15:6
granted [1] - 10:14
Group [1] - 4:21

**H**

hand [1] - 15:13
hard [1] - 8:13
headed [2] - 5:17, 6:8
held [1] - 6:23
help [1] - 5:23
hereby [2] - 15:5, 16:2
herein [1] - 15:8
hereto [1] - 16:4
hereunto [1] - 15:13
hopefully [2] - 6:2,
6:20
House [1] - 8:5

**I**

IA [2] - 2:4, 2:7
Illinois [3] - 4:18, 8:6,
14:6
immediately [1] - 6:19
IN [2] - 1:1, 15:13
INDEX [2] - 3:1, 3:6
initiate [1] - 7:8
interested [1] - 15:11
involve [1] - 7:7
IOWA [3] - 1:1, 1:4,
15:2
Iowa [12] - 1:15, 2:4,
7:25, 10:20, 10:24,
11:22, 11:23, 12:2,
12:24, 13:14, 15:5
Iowa's [1] - 7:22
issues [2] - 8:8, 9:9

**J**

JAKE [1] - 1:4
Jeremy [1] - 12:4
Jo [1] - 12:4
Jorgensen [1] - 12:4
JR [1] - 2:2
Jules [1] - 11:11
JULIA [1] - 2:4

**K**

knowledge [1] - 12:20

**L**

landscape [1] - 9:8
Lane [2] - 14:5
last [1] - 6:25
Law [1] - 2:2
lawsuit [1] - 11:25
LAWYER [1] - 3:2
legislation [2] - 10:9,
10:10
legislatures [1] - 7:11
less [1] - 9:16
Libertarian [12] - 5:9,
5:12, 6:9, 6:11, 7:5,
7:7, 12:5, 12:8,
12:22, 12:23, 13:10,
13:17
LIBERTARIAN [1] -
1:4
litigation [1] - 7:8
live [1] - 4:17
LLC [1] - 4:22
lobbying [2] - 7:9,
7:10
location [1] - 1:16
LOU [1] - 15:16
Lou [3] - 1:13, 1:25,
15:4
lowest [1] - 11:6

**M**

Madam [1] - 6:4
mail [1] - 14:4
maintained [1] - 5:8
mails [2] - 10:6, 10:12
man [1] - 5:18
mandate [1] - 10:11
March [7] - 7:24, 8:10,
8:20, 9:12, 12:9,
12:10, 12:13
marked [1] - 3:8
Matt [3] - 11:11, 11:16,

11:21
matters [2] - 7:11,
7:13
MATTHEW [1] - 2:6
means [3] - 8:11, 8:15,
9:5
Media [1] - 4:23
member [1] - 5:12
might [1] - 9:11
mind [3] - 11:10,
11:11, 11:13
minor [2] - 7:12, 8:15
Moines [1] - 2:7
Morgantown [1] - 2:2
most [3] - 7:18, 7:20,
10:5
MR [16] - 3:4, 4:7,
4:11, 4:14, 6:24,
11:8, 11:13, 11:15,
11:16, 11:17, 11:20,
13:19, 13:21, 14:1,
14:7, 14:10
MS [1] - 11:14

**N**

name [3] - 4:15, 4:16,
11:21
national [1] - 7:14
National [4] - 5:13,
5:14, 6:8, 6:11
need [2] - 7:4, 7:9
Notary [3] - 1:14, 15:4,
16:15
noted [1] - 16:3
number [2] - 3:8
numbers [1] - 6:8

**O**

objection [1] - 4:11
occupation [2] - 4:19,
4:22
October [1] - 1:16
OCTOBER [1] - 15:13
OF [10] - 1:1, 1:12,
3:1, 3:6, 3:11, 15:2,
15:3, 16:9, 16:10,
17:1
OFENBAKH [2] - 2:4,
11:14
off-the-record [1] -
6:22
offhand [1] - 13:3
office [2] - 9:12, 11:23
official [1] - 11:25
Ohio [5] - 9:20, 9:22,
9:25, 10:16

older [1] - 8:14
ON [1] - 3:7
one [2] - 5:18, 11:17
one-man [1] - 5:18
otherwise [1] - 15:11
outside [2] - 8:23,
10:1

**P**

p.m [2] - 1:15, 14:13
P.M.................... [1] -
3:10
P.O [1] - 2:2
PAGE [2] - 3:2, 16:1
PAGE....................
.... [1] - 3:12
PAGE___LINE___
CHANGE [12] - 17:2,
17:4, 17:6, 17:8,
17:10, 17:12, 17:14,
17:16, 17:18, 17:20,
17:22, 17:24
PAGES [1] - 3:7
Parker [4] - 1:13, 1:25,
14:2, 15:4
PARKER [1] - 15:16
part [1] - 10:5
participant [1] - 1:17
parties [5] - 4:8, 7:10,
7:12, 8:14, 9:10
PARTY [1] - 1:4
Party [7] - 5:9, 5:12,
6:9, 7:5, 7:7, 12:5,
12:22
party [3] - 8:15, 12:23,
15:11
past [4] - 5:16, 6:6,
6:7, 9:21
Pate [1] - 11:24
PATE [1] - 1:7
Paul [1] - 11:24
PAUL [1] - 1:7
people [9] - 9:1, 9:5,
9:6, 9:11, 9:15, 9:20,
10:2, 10:4, 13:6
perhaps [1] - 9:8
permission [1] - 10:14
petition [1] - 7:3, 7:4,
7:8, 8:20, 8:21, 8:23,
9:2, 9:24, 10:8,
10:14
petitioned [3] - 9:19,
10:24, 12:1
petitioner [1] - 8:24
petitioners [1] - 10:11
petitioning [6] - 8:25,
9:20, 10:16, 11:3,
11:7, 12:3

physical [1] - 4:9
place [1] - 15:8
placed [1] - 15:13
Plaintiffs [4] - 1:5,
1:13, 2:3, 2:5
PLLC [1] - 2:4
political [1] - 9:7
POLK [1] - 15:3
PORTER [1] - 1:4
potential [1] - 11:4
preference [1] - 13:23
presence [1] - 4:10
president [3] - 12:16,
12:23, 12:25
presidential [5] - 7:5,
7:7, 12:5, 12:8,
12:11
primaries [1] - 9:10
private [3] - 10:6,
10:8, 10:13
problem [1] - 6:18
problems [2] - 8:8, 9:4
procedures [1] - 7:18
process [1] - 5:6
property [2] - 10:8,
10:13
Public [3] - 1:14, 15:4,
16:15

**Q**

questions [2] - 11:9,
11:11

**R**

rare [1] - 10:8
rate [2] - 11:4, 11:5
react [2] - 9:6, 9:7
reaction [1] - 9:8
read [4] - 13:22,
13:24, 15:10, 16:2
REASON [12] - 17:3,
17:5, 17:7, 17:9,
17:11, 17:13, 17:15,
17:17, 17:19, 17:21,
17:23, 17:25
recent [1] - 9:21
record [3] - 4:8, 6:22,
15:6
recruit [3] - 8:13, 8:14,
8:16
recruiting [2] - 6:12,
8:17
Redpath [5] - 4:18,
4:17, 5:1, 11:21,
14:8
REDPATH [5] - 1:12,

4:2, 16:6, 16:13, 17:1
**REFERRED** [1] - 3:7
referred [1] - 3:8
registered [2] - 13:5, 13:6
relative [1] - 15:11
relatives [1] - 9:23
remotely [1] - 4:9
Reported [1] - 1:25
reporter [1] - 4:10
Reporter [3] - 1:14, 6:4, 15:4
REPORTER [4] - 5:19, 6:1, 6:5, 6:14
REPORTER..............
...... [1] - 3:11
represent [1] - 11:23
Representatives [1] - 8:5
required [3] - 12:22, 13:9, 13:14
Ridge [1] - 4:21
ROBERT [1] - 2:2
RPR [2] - 1:25, 15:16
rules [1] - 13:1
run [1] - 9:12
running [4] - 7:3, 7:6, 13:10, 13:14

### S

Satellite [1] - 4:23
Saturday [1] - 10:25
Secretary [2] - 1:7, 11:24
Sector [1] - 4:24
see [1] - 10:2
Senate [3] - 12:19, 13:9, 13:15
send [1] - 14:2
served [1] - 5:14
set [1] - 15:5
several [1] - 6:13
SHEET [1] - 17:1
Sheet(s [1] - 16:4
SHEET......................
........ [1] - 3:13
Shorthand [2] - 1:14, 15:4
show [1] - 5:18
sign [5] - 9:2, 10:4, 13:22, 13:24, 15:10
signature [1] - 11:3
SIGNATURE [2] - 3:12, 16:1
signatures [7] - 10:17, 10:18, 12:21, 12:25, 13:2, 13:8, 13:13

signers [1] - 11:4
solicited [2] - 10:17, 10:20
soliciting [1] - 10:18
sometimes [2] - 7:6, 7:11
sorry [4] - 5:20, 6:3, 6:14, 6:15
sort [1] - 6:18
sounds [1] - 6:1
SOUTHERN [1] - 1:1
specified [1] - 15:8
spend [1] - 8:12
Spike [1] - 12:4
spring [1] - 9:2
start [1] - 8:16
State [6] - 1:8, 1:15, 11:24, 13:14, 15:4
STATE [2] - 15:2, 16:9
state [4] - 4:15, 7:10, 10:9, 16:2
STATES [1] - 1:1
states [5] - 7:4, 7:19, 7:21, 7:23, 10:10
States [1] - 13:9
steer [1] - 7:15
step [1] - 9:12
stimulated [1] - 9:11
stop [3] - 9:1, 9:16, 10:4
Street [2] - 2:4, 2:6
subcommittee [1] - 6:10
Subscribed [1] - 16:12
suit [1] - 15:12
Suite [1] - 2:4
summer [1] - 9:3
Sunday [1] - 11:1
supposed [1] - 13:4
sworn [3] - 4:4, 15:5, 16:12

### T

Telecom [1] - 4:23
terms [2] - 8:17, 11:4
testified [1] - 4:4
testimony [1] - 15:6
TESTIMONY [1] - 15:13
THE [12] - 1:1, 1:1, 5:19, 5:22, 6:1, 6:2, 6:5, 6:14, 6:16, 13:24, 14:4, 14:9
Thomas [1] - 4:21
ticket [5] - 7:5, 7:8, 12:5, 12:8, 12:11
TO [1] - 3:7

transcript [2] - 14:3, 15:5
true [1] - 15:6
try [1] - 6:18
two [2] - 8:14, 11:17

### U

U.S [2] - 8:5, 12:18
United [1] - 13:9
UNITED [1] - 1:1
unless [1] - 10:9
up [3] - 5:17, 6:8, 9:12

### V

various [1] - 7:10
via [1] - 15:6
Via [4] - 1:25, 2:3, 2:5, 2:7
visiting [2] - 9:20, 9:23
vote [1] - 13:7
voters [1] - 13:5
vouch [1] - 4:7
vs [1] - 1:6

### W

waive [1] - 13:23
Walnut [1] - 2:6
weather [1] - 9:14
weekend [2] - 11:5, 14:11
west [1] - 4:18
West [1] - 14:6
Westley [1] - 14:5
WESTLEY [1] - 14:5
WHEREOF [1] - 15:13
WILLIAM [5] - 1:12, 4:2, 16:6, 16:13, 17:1
William [1] - 4:16
willing [3] - 9:16, 10:3, 10:4
win [1] - 9:10
winter [4] - 8:21, 8:23, 8:25, 9:19
wish [1] - 16:3
WITNESS [6] - 5:22, 6:2, 6:16, 13:24, 14:4, 14:9
witness [2] - 4:3, 15:9
WV [1] - 2:2

### Y

year [3] - 9:8, 9:9, 9:11
years [3] - 5:17, 6:6, 6:7
yourself [2] - 8:2, 10:16

### Z

ZOOM [1] - 1:12
Zoom [5] - 1:25, 2:3, 2:5, 2:7, 15:6

IN THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA

IOWA LIBERTARIAN PARTY and
JAKE PORTER,

          Plaintiffs,

VS.                                  Civil Action No.  4:19-cv-00241-SMR-HCA

PAUL D. PATE, Secretary of State
and State Commissioner of Elections,

          Defendant.

## AFFIDAVIT OF JAKE PORTER

The affiant, Jake Porter, being duly sworn, avers as follows:

I, Jake Porter, am a plaintiff in the above-captioned case. I have read the complaint in this case and state that it is true and accurate to the best of my knowledge.

I have been active in Libertarian Party activities and participated in the 2020 campaign to elect Libertarian candidates. I have also been a Libertarian candidate for Secretary of State and Governor and intend to run as a Libertarian candidate again. The Libertarian Party in 2020 experienced significantly greater difficulty in 2020 in recruiting people to run as Libertarian candidates than it had previously encountered because this was the first election cycle since the Iowa Legislature moved the filing date for nonparty political organization candidates to mid-March of an election year. In addition, the Party also experienced greater difficulty gathering

1

000046

signatures to qualify its candidates for the general election ballot because the new deadline force

the petitioning to a period so far in advance of the election and to a time when the weather was

not conducive to petitioning.


_____

Jake Porter

### NOTARY

Subscribed and sworn to before me by Jake Porter on this the _____ day of January,

2021.


My Commission expires _____.


_____

2

000047

## CERTIFICATE OF SERVICE

I, Robert M. Bastress, Jr., counsel for the plaintiff, certify that I have served the foregoing Affidavit on counsel for the defendant, Paul D. Pate, by filing the same on the Southern District of Iowa's Pacer CM/ECF system on this the 27th day of February, 2021.

/s/ *Robert M. Bastress, Jr.*

3

000048

IN THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA

IOWA LIBERTARIAN PARTY and
JAKE PORTER,

          Plaintiffs,

VS.                                  Civil Action No.  4:19-cv-00241-SMR-HCA

PAUL D. PATE, Secretary of State
and State Commissioner of Elections,

          Defendant.

## AFFIDAVIT OF JAKE PORTER

    The affiant, Jake Porter, being duly sworn, avers as follows:

    I, Jake Porter, am a plaintiff in the above-captioned case.  I have read the complaint in this case and state that it is true and accurate to the best of my knowledge.

    I have been active in Libertarian Party activities and participated in the 2020 campaign to elect Libertarian candidates.  I have also been a Libertarian candidate for Secretary of State and Governor and intend to run as a Libertarian candidate again.  The Libertarian Party in 2020 experienced significantly greater difficulty in 2020 in recruiting people to run as Libertarian candidates than it had previously encountered because this was the first election cycle since the Iowa Legislature moved the filing date for nonparty political organization candidates to mid-March of an election year.  In addition, the Party also experienced greater difficulty gathering

1

000049

signatures to qualify its candidates for the general election ballot because the new deadline force the petitioning to a period so far in advance of the election and to a time when the weather was not conducive to petitioning.

Jake Porter

## NOTARY

Subscribed and sworn to before me by Jake Porter on this the ___19___ day of January, 2021.

My Commission expires August 17, 2023.

HAYLEY BERRY
Commission Number 826319
MY COMMISSION EXPIRES
AUGUST 17, 2023

Hayley Berry

2