IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JAKE PORTER, IOWA LIBERTARIAN PARTY,<br><br>Plaintiffs,<br><br>vs.<br><br>PAUL D. PATE JR., SECRETARY OF STATE AND STATE COMMISSIONER OF ELECTIONS;<br><br>Defendant. | 4:19-cv-00241-HCA<br><br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the Court are cross-motions for summary judgment and a Joint Appendix filed by Plaintiffs, Jake Porter, and Iowa Libertarian Party (which sometimes may collectively be referred to as "ILP"), and Defendant, Paul D. Pate, Secretary of State and State Commissioner of Elections ("Pate"). ECF Nos. 35, 36. Pate filed a resistance to ILP's motion. ECF No. 37. ILP supplemented its motion to advise the Court of a case decided by the Sixth Circuit Court of Appeals. ECF No. 38. No party requested oral argument, and the Court concludes that oral argument is not needed. The Court deems the cross-motions are ready for ruling.

This case involves a constitutional challenge to Iowa Code § 44.4 and § 45.4, that in combination, govern an independent candidate's ability to be placed on the ballot for a general election in Iowa. ILP is a political organization that has fielded, or attempted to field, candidates for various government offices in Iowa, as well as nationally. Porter is a resident of Iowa and is a supporter of ILP. Porter previously has run as an ILP candidate for state office in Iowa and plans

to continue to do so in the future. Together, Porter and ILP contend that Iowa Code § 44.4 and § 45.4 violate the First and Fourteenth Amendments to the United States Constitution.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (moving party has initial responsibility of demonstrating absence of genuine issue of material fact). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.*, 477 U.S. at 324).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III. UNDISPUTED FACTS

The parties' filings, particularly the Joint Appendix, ECF No. 35-2, establish that the following material facts are undisputed.

Paul Pate is Iowa's Secretary of State. In that role, Pate serves as the commissioner of elections with oversight over Iowa's election laws.

Every two years, Iowa alternately votes on candidates for Governor and for President of the United States. If an organization's candidate obtains at least 2 percent of the total votes cast for all candidates for that respective office at the election, Iowa designates that organization as a "political party" for the next election cycle, pursuant to Iowa Code § 43.2(1)(b). Currently, Iowa recognizes only two Political Parties, Democratic and Republican. A political organization that has not qualified as a political party is classified as a political nonparty organization, pursuant to Iowa Code § 43.2(2).

A Political Party may choose its candidates for the next general election through the State's primary election process which is held in early June in each even-numbered year. Iowa Code § 43.7.

The Iowa Libertarian Party is a political nonparty organization under Iowa law. A political nonparty organization may nominate candidates for election by holding a caucus or convention. Iowa Code § 44.1. A qualified nomination for a statewide elective office requires the participation of at least 250 eligible voters including at least 1 from at least 25 counties at the convention or caucus. *Id*. A political nonparty organization also can nominate a candidate for elective office by collecting the requisite number of nomination petition signatures for the office sought (ranging from 50 to 1500 for statewide offices such as Governor) pursuant to Iowa Code § 45.1.

During the 2019 legislative session, the Iowa Legislature amended the election code sections that governed when a political nonparty organization must file nominations of its candidates for the general election. The amendment requires a political nonparty organization to file its nomination of candidates for the general election no "later than 5:00 p.m. on the eighty-first day before the first Tuesday after the first Monday in June in each even-numbered year." In essence, this created a March filing deadline for a political nonparty organization.[1]  Before the amendment, a political nonparty organization was required to nominate general election candidates seventy-three days before the general election, which resulted in an August deadline.

Molly Widen, Legal Counsel to the Iowa Secretary of State, indicated that the amendment to the election laws was not requested by the Iowa Secretary of State, but rather was proposed by a legislator as part of an amendment to an omnibus bill.  Joint App. at 14. She further testified that the Iowa Secretary of State took no position on the proposed amendments. *Id.* Ms. Widen indicated that she understood that the reason for the change was for uniformity- so that the Political Parties' and the political nonparty organizations' filing deadline would all be in March, creating one processing period in March instead of two (one in March and one in August). She also stated that the Secretary of State's Office had not reported any problems with the previous August filing deadline for political nonparty organization candidates. *Id.* In either situation, the election staff processes the same number of candidate petitions for the election period. Joint App. at 15. Even after the amended deadline, the election staff would still need to process the candidates nominated in the Political Party conventions during the month of August. *Id.*

---

[1] The March deadline does not apply to a political nonparty organization's nomination of candidates for the positions of United States President and Vice President.

Similarly, there is undisputed testimony in the record establishing that a March deadline creates burdens on a political nonparty organization.  Those burdens include: 1) limiting the time frame for the political nonparty organization to recruit candidates for the election year, and 2) making it more difficult to recruit volunteers, in part due to the winter weather in Iowa leading up to the March filing deadline.  Joint App. at 23-24 and 41-42. These burdens are compounded because the political landscape and election issues can change dramatically after mid-March and after the Political Party candidates are selected during the primary elections held in June. Joint App. at 24-25 and 42.

## IV. LEGAL ANALYSIS

The parties agree that there are no genuine issues of material fact that would preclude summary judgment in this case.  Rather, the parties have focused their respective arguments on which party is entitled to judgment based on the applicable law as applied to the undisputed facts.

Both ILP and Pate move for summary judgment. ECF No. 35, 36.  ILP alleges the amended deadline is unconstitutional because it violates Plaintiffs' rights to free speech, association, and equal participation in the political process. Pls.' Br. ECF No. 35-1 at 4 and 13. ILP premises its motion for summary judgment on the basis that the March filing deadline created under Iowa Code § 44.4 is unduly burdensome and impacts the fundamental rights of voters, political nonparty organizations, and candidates and as such, is subject to strict scrutiny. *Id*. at 4.

Pate also filed a motion for summary judgment arguing that the March deadline is minimally burdensome and thus is "[s]ubject to a less-searching examination closer to rational

basis and the State's important regulatory interests are generally sufficient to justify the restrictions." Def.'s Br. ECF No. 36-1 at 3-4.

"Constitutional challenges to specific provisions of a State's election laws [] cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (*quoting Storer v. Brown*, 415 U.S. 724, 730 (1974)). When deciding whether state election laws violate plaintiffs' associational rights and the right to vote effectively under the First and Fourteenth Amendments, the Court applies the framework set forth by the United States Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). That framework requires the Court to weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that ILP seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule. *Anderson*, 460 U.S. at 789. The appropriate balance is determined by the magnitude of the burden. If the burden is severe, the rule will be upheld only if it is "narrowly drawn to advance a state interest of compelling importance." *Burdick,* 504 U.S. at 434 (*quoting Norman v. Reed*, 502 U.S. 279, 289 (1992)). On the other hand, if the rule is minimally burdensome, the state's regulatory interests will likely justify "reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788.

The Court finds and concludes that the March filing deadline for political nonparty organization candidates imposes a substantial burden on ILP's First and Fourteenth Amendment rights. The testimony about the negative impact that the March deadline has on the constitutional rights of ILP is uncontroverted in this record. The March deadline actually places a political nonparty organization at a disadvantage to a Political Party. A political nonparty organization must have its candidates selected before the March deadline which severely restricts its ability to

recruit candidates and to petition potential voters due to the winter weather in Iowa and because the political landscape has not been fully developed by the March deadline. For example, the Political Parties do not select their final candidates until after the primary election in June.

Pate contends that the burden on a political nonparty organization from the March deadline is minimal given the state's low signature requirement of eligible electors required for nomination by petition. Pate's argument, however, ignores a critical point of ILP's constitutional challenge. ILP argues that the March deadline, standing alone, requires a political nonparty organization to make its nominations for the general election well before the political landscape is fleshed out, before the primary elections in June, before the Political Party candidates are solidified and finalized, before the current election issues are fully developed, and before voters are truly engaged in the election process.

The Court finds the challenged Iowa law to be similar to the Arkansas law challenged in *Moore v. Martin*, 854 F.3d 1021 (8th Cir.), *cert. denied*, 138 S. Ct. 321 (2017).[2] In *Moore,* the Eighth Circuit found that the district court correctly found that a March 1 filing deadline for independent candidates imposed a substantial burden on Moore's First and Fourteenth Amendment rights. *Moore*, 854 F.3d at 1026. The *Moore* court chronicled the legal challenges to the Arkansas ballot access requirements for independent candidates since 1975. *Id.* Although careful to avoid creating a "litmus-paper test," the Eighth Circuit noted that a final deadline earlier than the first Tuesday in April under Arkansas law would require additional justification

---

[2] In *Moore*, the Eighth Circuit remanded the case for further proceedings because the Circuit concluded that there was a genuine dispute of material fact as to whether the verification of independent candidate petitions would conflict with the processing of other signature petitions under the former May 1 deadline. *Moore*, 854 F.3d at 1028-29. There is no such factual dispute in the instant case.

from the state to distinguish it from a prior case finding the April deadline unconstitutional standing on its own. *Id.*

Having determined that the magnitude of the injury to ILP's rights is substantial, the Court next determines whether the challenged statutory language is narrowly drawn to serve a compelling interest of the State. The only interest set forth by Pate to justify the March deadline was the promotion of uniformity of one filing deadline, which allows the Secretary of State's office to review the candidate filings in one period (March) rather than two (March and August). The only factual support that uniformity and/or efficiency serve as the justification for the March deadline is the testimony of Ms. Widen. Joint App. at 14. Taking this undisputed factual testimony at face value, the Court finds and concludes that the State of Iowa does have a substantial interest in effective and equitable administration of its election laws.

The Court, however, finds and concludes that the challenged statutory language is not narrowly drawn to serve that interest for the following reasons. The undisputed testimony establishes that the Secretary of State's office had raised no concern that the previous August deadline hampered their ability to effectively administer the election laws. The Secretary of State did not request the earlier deadline and had not experienced problems with the August deadline. Joint App. at 14-15. Furthermore, the March deadline did not result in only one processing period as the Secretary of State's office still needs the August review period to process the Political Party candidates nominated during the major party conventions, although those petitions required a shorter processing time. Joint App at 15. The same would be true for any petitions filed for United States President as those still had an August not March deadline. Regardless of whether the deadline was March or August, the Secretary of State's office would still process the same number of petitions for that election year. *Id.* This record is devoid of any factual support

that suggests that the August filing deadline impeded the State of Iowa's ability to administer its election laws effectively and equitably, thus necessitating an earlier deadline.

A balancing of the burdens that the March deadline places on ILP against a need for the earlier deadline to serve the State of Iowa's articulated interest in effective and equitable administration of election laws leans strongly in favor of a finding that the statutory language does not pass muster under the *Anderson-Burdick* framework. Accordingly, the Court finds and concludes that Iowa Code § 44.4 and § 45.4 are unconstitutional in violation of Porter's and ILP's rights under the First and Fourteenth Amendments.

## V. CONCLUSION AND ORDER

The Court **grants** Plaintiffs' Motion for Summary Judgment [ECF No. 35] and **denies** Defendant's Motion for Summary Judgment [ECF No. 36].

In their Complaint, Porter and ILP ask the Court to enter declaratory judgment with respect to the challenged statutory sections. The declarations Porter and ILP seek are no broader than the Court's findings and conclusions in this Order. The separate declaratory judgment Porter and ILP seek is unnecessary and the Court declines to grant it.

In their Complaint and Motion for Summary Judgment, Porter and ILP also seek injunctive relief. In their cross motions for summary judgment, neither party briefed the issue of injunctive relief. The Court orders the parties to file briefs concerning the issue of injunctive relief, including an analysis of the factors set out in, *Dataphase Systems, Inc., v. C L Systems Inc.*, 640 F.2d 109, 114 (8th Cir. 1991) (en banc). Each party shall file a brief on the issue of injunctive relief of no more than 7 pages by no later than April 20, 2022. After the briefs are filed, the Court will issue a supplemental ruling on the issue of injunctive relief.

In their Complaint, Porter and ILP also have requested that the Court enter an order granting them attorneys' fees and costs. If Porter and ILP still request attorneys' fees and costs, they shall file a motion in compliance with Federal Rule of Civil Procedure 54 and LR 54A. After Pate has an opportunity to respond to any such motion, the Court will enter a separate ruling.

IT IS SO ORDERED.

This 8th day of April, 2022.

Helen C. Adams
Chief U.S. Magistrate Judge